RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111-4144
Telephone:  (415) 984-6400
Facsimile:  (415) 984-2698
Email:  rkennedy@skadden.com

Of Counsel:
ANDREW L. SANDLER (To Be Admitted *Pro Hac Vice*)
BENJAMIN B. KLUBES (To Be Admitted *Pro Hac Vice*)
BENJAMIN P. SAUL (To Be Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave., N.W.
Washington, DC 20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
Email:  asandler@skadden.com, bklubes@skadden.com, bsaul@skadden.com

(Additional Attorneys Listed on Signature Pages)

Attorneys for Defendants

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP),<br><br>                    Plaintiff,<br><br>     v.<br><br>AMERIQUEST MORTGAGE COMPANY, <u>et al.</u>,<br><br>                    Defendants. | No. SACV 07-0794 AG (ANX)<br><br>CLASS ACTION<br><br>(1) NOTICE OF JOINT MOTION AND JOINT MOTION OF DEFENDANTS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;<br><br>(2) [PROPOSED] ORDER (Lodged Under Separate Cover)<br><br>ORAL ARGUMENT REQUESTED<br><br>Date:    June 2, 2008<br>Time:    10:00 a.m.<br>Place:   Courtroom 10D<br>              Santa Ana Courthouse<br>Judge:  Hon. Andrew J. Guilford |

---

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

# NOTICE OF JOINT MOTION AND JOINT MOTION

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** at 10:00 a.m., on June 2, 2008, or as soon thereafter as the matter may be heard in Courtroom 10D of the United States District Court for the Central District of California, Southern Division, located at 411 West Fourth Street, Room 1053, Santa Ana, CA 92701-4516, the Honorable Andrew J. Guilford presiding, Defendants named as Ameriquest Mortgage Company, Fremont Investment & Loan, Option One Mortgage Corporation, Accredited Home Lenders, Inc., Bear Stearns Residential Mortgage Corporation d/b/a Encore Credit, CitiMortgage, First Franklin Financial Corporation, HSBC Finance Corporation, GMAC Mortgage Group, LLC, GMAC ResCap, National City Corporation, First Tennessee Bank d/b/a First Horizon National Corporation, Washington Mutual, Inc., Long Beach Mortgage Company, J.P. Morgan Chase & Co., Chase Bank USA, NA, SunTrust Mortgage, and Defendant WMC Mortgage, LLC, successor-in-interest to Defendant named as WMC Mortgage Corporation, ("Defendants") will, and hereby do, jointly move the Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss with prejudice all claims asserted against them in Plaintiff National Association for the Advancement of Colored People's ("Plaintiff") Second Amended Complaint ("SAC") for lack of standing and subject matter jurisdiction and for failure to state a claim upon which relief may be granted.  The grounds for this motion are:

1.     Plaintiff lacks standing to bring the claims in the SAC either in its own right or on organizational and associational grounds.

2.     The SAC is factually deficient, implausible, and otherwise fails to assert cognizable claims under Federal Rule of Civil Procedure 8 and Supreme Court precedent.

3.     Apart from Plaintiff's failure to properly plead its allegations in the SAC, the SAC also suffers from the fatal legal defect that, under recent Supreme Court precedent, neither the Equal Credit Opportunity Act ("ECOA"), nor the Fair Housing Act ("FHA") permits disparate impact claims.

4.     At a minimum, the Court should dismiss Plaintiff's FHA claim because ECOA bars Plaintiff from proceeding and recovering under both it and the FHA.

This joint motion is based on this Notice of Joint Motion and Joint Motion, the attached Memorandum of Points and Authorities, all pleadings and papers filed in this action, and such other materials as may be presented to the Court before, at, or in connection with the hearing.

Consistent with this Court's March 14, 2008 Case Management Order, certain Defendants, with the filing of this joint motion, are concurrently filing individual motions to dismiss this action pursuant to Federal Rule of Civil Procedure 12(g)(1), among other provisions.  By joining this joint motion, any such Defendants do not waive any applicable defenses advanced in their individual motions.

This joint motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 28, 2008.


Dated: April 4, 2008                     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


                                         By:   /s/ Raoul D. Kennedy
                                              Raoul D. Kennedy

                                         Attorneys for Defendants named as Bear Stearns Residential Mortgage Corporation d/b/a Encore Credit, Fremont Investment & Loan, GMAC Mortgage Group, LLC, GMAC ResCap, and National City Corporation

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

1  Dated:  April 4, 2008                    BUCHALTER NEMER

2
                                            By:   /s/ Bernard E. LeSage
3                                               Bernard E. LeSage

4
                                            Attorneys for Defendant named as
5                                           Ameriquest Mortgage Company

6
   Dated:  April 4, 2008                    MUNGER, TOLLES & OLSON LLP
7
                                            By:   /s/ Ronald K. Meyer
8                                               Ronald K. Meyer (State Bar No. 71944)

9
                                            Attorneys for WMC Mortgage, LLC,
10                                          successor-in-interest to Defendant named
                                            as WMC Mortgage Corporation
11

12 Dated:  April 4, 2008                    REED SMITH LLP

13
                                            By:   /s/ Tyree P. Jones, Jr.
14                                              Tyree P. Jones, Jr.

15
                                            Attorneys for Defendant named as First
16                                          Franklin Financial Corporation

17
   Dated:  April 4, 2008                    STROOCK & STROOCK & LAVAN LLP
18

19                                          By:   /s/ Julia B. Strickland
                                                Julia B. Strickland
20

21                                          Attorneys for Defendant named as HSBC
                                            Finance Corporation
22

23 Dated:  April 4, 2008                    BUCKLEY KOLAR LLP

24
                                            By:   /s/ Matthew P. Previn
25                                              Matthew P. Previn

26
                                            Attorneys for Defendant named as
27                                          Accredited Home Lenders, Inc.

28
                                         - iii -

   NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

1  Dated:  April 4, 2008                    O'MELVENY & MYERS LLP

2

3                                           By:   /s/ Brian P. Brooks
                                                 Brian P. Brooks (State Bar No. 172151)

4
                                            Attorneys for Defendant named as Option
5                                           One Mortgage Corporation

6  Dated:  April 4, 2008                    GOODWIN PROCTOR LLP

7

8                                           By:   /s/ Brooks R. Brown
                                                 Brooks R. Brown
9
                                            Attorneys for Defendant named as First
10                                          Tennessee Bank d/b/a First Horizon
11                                          National Corporation

12 Dated:  April 4, 2008                    MORRISON & FOERSTER LLP

13

14                                          By:   /s/ Michael J. Agoglia
                                                 Michael J. Agoglia
15
                                            Attorneys for Defendants named as
16                                          Washington Mutual, Inc., Long Beach
17                                          Mortgage Company, J.P. Morgan Chase &
                                            Co., and Chase Bank USA, NA
18

19 Dated:  April 4, 2008                    MCKENNA LONG & ALDRIDGE LLP

20
                                            By:   /s/ Will S. Skinner
21                                               Will S. Skinner

22
                                            Attorneys for Defendant named as
23                                          SunTrust Mortgage

24

25

26

27

28
                                         - iv -

1
2   Dated:  April 4, 2008                     KEESAL, YOUNG & LOGAN
3                                             By:___/s/ Stacey Garrett_____
4                                                 Stacey Garrett
5                                                 Attorneys for Defendant named as
                                                  CitiMortgage
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................ viii

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

ARGUMENT ...................................................................................................... 4

I.   PLAINTIFF LACKS ORGANIZATIONAL STANDING TO ASSERT THE CLAIMS IN THE SAC. ...................................................................... 4

    A.   Plaintiff Has Not Alleged An Injury Sufficient to Establish Standing to Bring Its FHA Claims. ..................................................... 6

    B.   Plaintiff Never Applied For Credit From Any Defendant And Lacks Standing To Assert a Claim Under the ECOA and Civil Rights Act. ............................................................................................ 7

    C.   Plaintiff Fails to Allege Defendants' Conduct Caused Its Injuries. ...... 9

II.  PLAINTIFF LACKS ASSOCIATIONAL STANDING TO MAINTAIN THIS ACTION IN A REPRESENTATIVE CAPACITY ........................... 10

    A.   By Not Identifying A Member With Standing To Sue Each Defendant, Plaintiff Fails To Meet Hunt's First Required Element. ......................................................................................... 10

    B.   Plaintiff's Request for Monetary Relief and the Nature of Its Claims Violates Hunt's Third Prong, Without Member Participation. ................................................................................... 12

III. PLAINTIFF HAS FAILED TO STATE A CLAIM BECAUSE ITS ALLEGATIONS ARE INSUFFICIENT UNDER CONTROLLING SUPREME COURT PRECEDENTS. ...................................................... 15

    A.   The SAC Lumps Every Defendant Together, and So States No Claim Against Any Of Them. ........................................................ 15

    B.   Plaintiff Has Failed to State a Disparate Impact Claim Under Its First and Second Causes of Actions. ................................................ 18

        1.   Plaintiff Fails to Allege an Actionable Policy. ....................... 18

        2.   Plaintiff Fails to Allege a Disparate Impact. .......................... 20

        3.   Plaintiff Fails to Allege a Causal Connection between Any Defendant's Policies and the Alleged Disparate Impact. ......... 23

    C.   Plaintiff Has Failed to State an Intentional Discrimination Claim. .... 23

IV.   NEITHER THE FHA NOR THE ECOA PERMITS DISPARATE
IMPACT CLAIMS. ..................................................................................24

V.   PLAINTIFF'S FHA CLAIMS SHOULD BE DISMISSED BECAUSE
THEY ARE MUTUALLY EXCLUSIVE OF ITS ECOA CLAIMS. ..........30

CONCLUSION ...............................................................................................31

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>FEDERAL CASES</u>

3

<u>Alexander v. Sandoval,</u>
 532 U.S. 275, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001) ....................28, 29

4

<u>American Baptist Churches v. Meese,</u>
 712 F. Supp. 756 (N.D. Cal. 1989).........................................................13, 14

5

6

<u>Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,</u>
 No. 01 CV 11502 (GBD), 2004 WL 2813121
 (S.D.N.Y. Dec. 8, 2004)..............................................................................16

7

8

<u>Bano v. Union Carbide Corp.,</u>
 361 F.3d 696 (2d Cir. 2004)................................................................12, 13

9

<u>Bayaa v. United Airlines, Inc.,</u>
 249 F. Supp. 2d 1198 (C.D. Cal 2002)..................................................10, 11

10

11

<u>Bell Atlantic Corp. v. Twombly,</u>
 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).......................................<u>passim</u>

12

13

<u>Black Faculty Association of Mesa College v. San Diego</u>
 <u>Community College District,</u>
 664 F.2d 1153 (9th Cir. 1981)....................................................................10

14

15

<u>Brown v. Coach Stores, Inc.,</u>
 163 F.3d 706 (2d Cir. 1998)........................................................................23

16

<u>Burrell v. State Farm Fire & Casualty Co.,</u>
 No. 00 CIV 5733, 2001 WL 797461, (S.D.N.Y. July 12, 2001) ............20, 23

17

18

<u>Caputo-Conyers v. Berkshire Realty Holdings, LP,</u>
 No. 6:05CV341ORL31KRS, 2005 WL 1862697
 (M.D. Fla. Aug. 2, 2005)..............................................................................20

19

20

<u>Cetacean Community v. Bush,</u>
 386 F.3d 1169 (9th Cir. 2004).......................................................................5

21

<u>Collette v. St. Luke's Roosevelt Hospital,</u>
 132 F. Supp. 2d 256 (S.D.N.Y. 2001)...................................................22, 23

22

23

<u>Community for Creative Non-Violence v. Pierce,</u>
 814 F.2d 663 (D.C. Cir. 1987) ......................................................................6

24

<u>Cooley v. Sterling Bank,</u>
 280 F. Supp. 2d 1331 (M.D. Ala. 2003)......................................................31

25

26

<u>Dimaio v. Democratic National Committee,</u>
 No. 07-14816, 2008 WL 744430 (11th Cir. March 21, 2008) .......................1

27

28

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

Estate of Kunze v. Commissioner,
    233 F.3d 948 (7th Cir. 2000)................................................................31

Evans v. First Federal Savings Bank of Indiana,
    669 F. Supp. 915 (N.D. Ind. 1987)........................................................8

Evans v. McKay,
    869 F.2d 1341 (9th Cir. 1989)..............................................................24

Gamble v. City of Escondido,
    104 F.3d 300 (9th Cir. 1997)................................................................14

Garcia v. Countrywide Financial Corp.,
    No. EDCV 07-1161-VAP (JCRx)
    (C.D. Cal. Jan. 15, 2008)....................................................................30

Garcia v. Johanns,
    444 F.3d 625 (D.C. Cir. 2006) ............................................................28

Griggs v. Duke Power Co.,
    401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971) ...................24, 25, 28

Gompper v. VISX, Inc.,
    298 F.3d 893 (9th Cir. 2002) ................................................................1

Havens Realty Corp. v. Coleman,
    455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) ...........................6

Hood River County v. United States,
    532 F.2d 1236 (9th Cir. 1976)...............................................................6

Hunt v. Washington State Apple Advertising Commission,
    432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977) ........................10-12

In re McKesson HBOC, Inc. ERISA Litigation,
    2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ........................................16

International Brotherhood of Teamsters v. United States,
    431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977) ............................18

Jackson v. Birmingham Board of Education,
    544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) ........................28

Johnson v. County of Nassau,
    480 F. Supp.2d 581 (E.D.N.Y 2007)......................................................23

Keith v. Volpe,
    858 F.2d 467 (9th Cir. 1988)...............................................................30

Kulkarni v. City University of New York,
    No. 01 CIV 10628(DLC), 2002 WL 1315596
    (S.D.N.Y. June 14, 2002).....................................................................20

- ix -

Legal Aid Society of Hawaii v. Legal Services Corp.,
145 F.3d 1017 (9th Cir. 1998)..................................................................5, 6

Limbach v. Hooven & Allison Co.,
466 U.S. 353, 104 S. Ct. 1837, 80 L. Ed. 2d 356 (1984) .............................30

Llamas v. Butte Community College District,
238 F.3d 1123 (9th Cir. 2001)......................................................................19

Lujan v. Defenders of Wildlife,
504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ............................5

Miller v. American Express Co.,
688 F.2d 1235 (9th Cir. 1982)......................................................................30

Moore v. Hughes Helicopters, Inc.,
708 F.2d 475 (9th Cir. 1983)........................................................................22

National Federation of the Blind v. Target Corp.,
No. C. 06-1802, 2007 WL 2846462 (N.D. Cal. Oct. 2, 2007) .....................12

Paige v. California,
291 F.3d 1141 (9th Cir. 2002)......................................................................18

Pfaff v. HUD,
88 F.3d 739 (9th Cir. 1996)..........................................................................14

Rainbow Push Coalition v. AmSouth Bank,
2005 WL 637834 (M.D. Tenn. 2005)............................................................8

Raytheon v. Hernandez,
540 U.S. 44, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003) ..............................28

Rent Stabilization Ass'n of New York v. Dinkins,
5 F.3d 591 (2d Cir. 1993)......................................................................13, 14

Rodriguez v. Beechmont Bus Service, Inc.,
173 F. Supp. 2d 139 (S.D.N.Y. 2001) .........................................................20

Rodriguez v. United States,
480 U.S. 522, 107 S. Ct. 1391, 94 L. Ed. 2d 533 (1987)  ...........................29

Saunders v. General Services Corp.,
659 F. Supp. 1042 (E.D. Va. 1986) ............................................................8, 9

Sierra Club v. Morton,
405 U.S. 727, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972) ................................5

Situ v. Leavitt,
No. C06-2841 TEH, 2006 WL 3734373 (N.D. Cal. Dec. 18, 2006)..............9

Smith v. City of Jackson,
544 U.S. 228, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005) ...................passim

- x -

Smith v. Pacific Properties and Development Corp.,
    358 F.3d 1097 (9th Cir. 2004)..........................................................12, 13

Spann v. Colonial Village, Inc.,
    899 F.2d 24 (D.C. Cir. 1990) .......................................................7

Stout v. Potter,
    276 F.3d 1118 (9th Cir. 2002)......................................................19

Syverson v. International Business Machines Corp.,
    No. C-03-04529 RMW, 2007 WL 2904252
    (N.D. Cal. Oct. 3, 2007)........................................................20, 23

Trezza v. Hartford, Inc.,
    No. 98 CIV 2205, 1998 WL 912101
    (S.D.N.Y. Dec. 30, 1998).........................................................23

United Union of Roofers No. 40 v. Insurance Corp. of America,
    919 F.2d 1398 (9th Cir. 1990)......................................................12

Walker v. City of Lakewood,
    272 F.3d 1114 (9th Cir. 2001)......................................................7

Wagner v. Daewoo Heavy Industries American Corp.,
    314 F.3d 541 (11th Cir. 2002)......................................................1

Wards Cove Packing Co. v. Atonio,
    490 U.S. 642, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989) ...................passim

Warth v. Seldin,
    422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ..........................5, 9

Watson v. Fort Worth Bank & Trust,
    487 U.S. 977, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988) .....................18-20

Valley Forge Christian College v. Americans
    United for Separation of Church & State, Inc.,
    454 U.S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) ................................7

**FEDERAL AUTHORITIES**

12 C.F.R. § 202.2(e) .......................................................8

12 U.S.C. §§ 2801-2809..................................................4

15 U.S.C. § 1691.......................................................passim

29 U.S.C. § 623(a) .....................................................26

42 U.S.C. § 1981.......................................................8

42 U.S.C. § 1982.......................................................8

- xi -

1  42 U.S.C. § 2000e-2(a) ..............................................................................25, 26

2  42 U.S.C. § 3605...........................................................................................26

3  Fed. R. Civ. P. 8......................................................................................2, 15, 16

4  Pub. L. 90-284 § 812, 82 Stat. 73 (Apr. 11, 1968)...................................31

5  Pub. L. 94-239 § 6, 90 Stat. 251 (Mar. 23, 1976) ...................................31

6  Pub. L. 100-430 § 8(2), 102 Stat. 1619 (Sept. 13, 1988) .......................31

7  U.S. Const. art. III, § 2. ......................................................................<u>passim</u>

8
## **<u>OTHER AUTHORITIES</u>**

9

Board of Governors of the Federal Reserve Board, <u>Report to the Congress
10      on Credit Scoring and its Effects on the Availability and Affordability
        of Credit</u>, <u>available at</u> http://www.federalreserve.gov/boarddocs/
11      RptCongress/creditscore/creditscore.pdf (Aug. 2007). ................................4

12  Brief for United States as Amicus Curiae, <u>Huntington v. Huntington
        Branch, NAACP</u>, 488 U.S. 15, 109 S. Ct. 276, 102 L. Ed. 2d 180
13      (1988) (No. 87-1961), <u>available at</u>
        http://www.usdoj.gov/osg/briefs/1987/ sg870004.txt. ................................29

14
    Robert B. Avery, et al., <u>New Information Reported Under HMDA and
15      its Application in Fair Lending Enforcement</u>, FED. RES. BULL.,
        Summer 2005...........................................................................................4, 21

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

# PRELIMINARY STATEMENT

In its Second Amended Complaint ("SAC"), the National Association for the Advancement of Colored People ("NAACP" or "Plaintiff"), a political advocacy organization that itself lacks standing, identifies no specific individual who has been injured.  Putting aside that the SAC is factually wrong—the 18 named financial institutions, which range from the nation's largest banks to a small, defunct finance company in California, do not discriminate against borrowers on the basis of race, much less in an identical manner as Plaintiff alleges—its legal deficiencies also are manifest.  Given the opportunities that Plaintiff has already had to correct them, the SAC should be dismissed with prejudice.[1]

First, Plaintiff lacks standing of any kind.  The SAC does not reference a representative member plaintiff.  Plaintiff, moreover, alleges no injury, and instead, in conclusory fashion, pleads merely that the alleged conduct "*tends*" to hurt it in unspecified ways without pleading any causal link.  Plaintiff itself is not a credit applicant, has no privity with any of the Defendants, and simply cannot establish any form of standing that would give the Court jurisdiction over its claims.

Even if the Plaintiff had standing—which it does not—it cannot state a claim under Rule 12(b)(6) because it fails to offer factual allegations in the SAC that plausibly support its claims.  Plaintiff's allegations are vague, conclusory, implausible—if even identifiable—and otherwise insufficient under Federal Rule of

---

[1]  As explained more fully in the Factual and Procedural Background Section, Plaintiff has already amended its First Amended Complaint in an unsuccessful attempt to correct the defects identified by the Defendants during a February 2008 "meet and confer."  The Court, therefore, should not grant Plaintiff further leave to amend the SAC, and, instead, should dismiss the SAC with prejudice.  See, e.g., Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002); see also Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc); cf. Dimaio v. Democratic Nat'l Comm., No. 07-14816, 2008 WL 744430, at *3-4 (11th Cir. Mar. 21, 2008).

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

1  Civil Procedure 8 and recent Supreme Court precedent.  The SAC fails to make any

2  allegations specific to any of the Defendants, and Plaintiff fails to plead the most

3  basic elements of its disparate impact claims by not identifying (1) a specific or

4  actionable policy of any, let alone each, of the Defendants, (2) an actual disparate

5  impact, or (3) causal connection between the two.

6       Aside from Plaintiff's failure to properly plead its allegations in the SAC,

7  Plaintiff cannot state cognizable disparate impact claims under either the FHA or the

8  ECOA because, as recent Supreme Court precedent makes clear, Congress only

9  authorizes disparate impact liability when it uses certain statutory language that is

10  absent from both statutes.  Finally, and at a minimum, the Court should dismiss with

11  prejudice the Plaintiff's claims under the FHA because, as the ECOA and relevant

12  case law explicitly state, they are mutually exclusive of its claims under the ECOA.

13                     <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

14       The short procedural history of this case highlights the deficiencies of the

15  SAC.  On July 11, 2007, during the weekend of its annual convention, the NAACP

16  filed its original complaint, which was accompanied by an extensive press release,

17  against 14 defendants.  Instead of serving the Complaint, the NAACP spent the next

18  six months conducting a press campaign openly soliciting representative plaintiffs.

19  Despite its extensive initial media efforts, the NAACP still has not identified a single

20  individual allegedly subject to discrimination by the Defendants.

21       Not until after this Court's December 13, 2007 entry of an Order to Show

22  Cause why this case should not be dismissed, did Plaintiff serve its First Amended

23  Complaint ("FAC") on the Defendants.  Although the FAC named four additional

24  defendants, it was very similar to the July 2007 complaint—an amalgamation of

25  inaccurate and incomplete lending industry studies devoid of allegations specific to

26  any Defendant.  Following a "meet and confer" initiated on February 12, 2008

27  among counsel concerning the Defendants' anticipated joint motion to dismiss the

28

- 2 -

1   FAC on, among other grounds, its lack of particularized allegations, Plaintiff
2   requested an opportunity to amend the FAC to address these issues.  On March 7,
3   2008, Plaintiff filed its SAC, concurrently issuing another press release that
4   reiterated its generalized allegations against the Defendants named in the SAC and
5   claimed credit for "fast-tracking" this litigation.  The SAC, however, fails to address
6   any of the deficiencies in the FAC that the Defendants identified during the meet and
7   confer process, with Plaintiff merely adding a reference to 2006 census data
8   concerning household income levels, which it repeats verbatim for each of the
9   Defendants.

10          The SAC, like its predecessor complaints, is conclusory and its allegations
11  uniform—not one allegation is specific to any one defendant, and no viable claims
12  are stated.  The SAC relies on the sole "fact" that all the Defendants are, or were,
13  mortgage lenders as the basis of its allegations that—contrary to reason and reality—
14  each offered the same mortgage products, underwrote available products according
15  to identical policies and guidelines, engaged in the same conduct, and had the same
16  intent.  In a misguided and ineffective effort to hide this glaring legal deficiency in
17  both the original Complaint and the FAC, the SAC does no more than to divide the
18  Defendants into "subclasses," and with respect to each defendant, separately repeat
19  verbatim the same 48 paragraphs to allege that each defendant purportedly placed
20  African-American borrowers into higher-cost subprime loans than their similarly
21  situated Caucasian counterparts.  In fact, many of the named defendants have never
22  originated, or currently do not originate, mortgage loans, subprime or otherwise.
23  Others have never offered prime mortgage loans, and, thus, it is impossible that they
24  could have—as Plaintiff alleges—"steered" borrowers into higher cost subprime
25  loans in lieu of prime loans.  The Court should not permit Plaintiff to avoid scrutiny
26  of the SAC's numerous deficiencies by lumping the Defendants together.

27

28

- 3 -

1   Plaintiff also lards the SAC with selective references to various studies that it

2   claims demonstrate that Defendants, collectively, have discriminated in their

3   underwriting and pricing of subprime mortgage loans.   None of these studies

4   identifies individual lenders.   Instead, the studies rely on *aggregate industry* data

5   lenders provide to the federal government under the Home Mortgage Disclosure Act

6   ("HMDA"),[2] which does not include information about borrower debt-to-income

7   ratios or credit histories, property values or other key credit-worthiness and pricing

8   information that is essential to evaluating allegations of discriminatory lending.[3]

9   In light of both the SAC's many legal deficiencies and the procedural history

10  of this case demonstrating that the Plaintiff had ample opportunity to correct those

11  defects prior to filing its SAC, the Court should dismiss the SAC with prejudice.

12  <u>**ARGUMENT**</u>

13  **I.   PLAINTIFF LACKS ORGANIZATIONAL STANDING TO ASSERT

14       THE CLAIMS IN THE SAC.**

15  As a threshold matter, the Court lacks subject matter jurisdiction over the

16  claims in the SAC.   Despite presenting a third iteration of its allegations after "meet

17  _____

18  [2] Codified at 12 U.S.C. §§ 2801-09.

19  [3] <u>See, e.g.</u>, Robert B. Avery et al., <u>New Information Reported Under HMDA and its Application in Fair Lending Enforcement</u>, FED. RES. BULL., at 393-394 (Summer

20  2005) (explaining that "reaching convincing conclusions" as to whether specific lenders discriminate "requires institution-specific analysis" that is "not possible with the HMDA data alone," and "improperly analyzed pricing differences" based on

21  "raw data alone can lead to inaccurate conclusions, which in turn may be unfair to particular institutions").   Plaintiff's avoidance of analyses involving credit scores is

22  not surprising given that the *Federal Reserve Board in a report to Congress recently concluded that the use of credit scores is not discriminatory*.   The study found that

23  credit scoring: (1) has increased both the availability and affordability of credit for all populations, (2) is predictive of credit risk, and (3) *is not a proxy for race*.   <u>See</u>

24  Board of Governors of the Federal Reserve Board, <u>Report to the Congress on Credit Scoring and its Effects on the Availability and Affordability of Credit</u>, <u>available at</u>

25  http://www.federalreserve.gov/boarddocs/RptCongress/creditscore/creditscore.pdf. Plaintiff does reference a 2006 Center for Responsible Lending Study that purports

26  to show the disparate impact that HMDA data cannot. (SAC ¶¶ 6 and 60-64.) Among its other defects, however, the study fails to compare the borrowers Plaintiff

27  has put at issue in this action.   <u>See</u> *infra* Section III.B.2.

28  - 4 -

1  and confer" discussions with Defendants, Plaintiff still has not placed before this
2  Court a concrete case or controversy capable of judicial resolution, as Article III and
3  countless Supreme Court cases require.  Plaintiff, therefore, fails to establish its
4  standing on either an organizational or an associational basis.  No organization, not
5  even one as storied as the NAACP, can avoid the preliminary requirement of
6  standing to seek relief from the courts.  And, even if the SAC articulated an injury-
7  in-fact that might confer standing upon the Plaintiff, which it does not and cannot,
8  the Court must, nevertheless, dismiss Plaintiff's ECOA and Civil Rights Act claims
9  because any such injury falls outside the zone of interests that these statutes protect.

10      Standing "is the threshold question in every federal case, determining the
11  power of the court to entertain the suit."  Warth v. Seldin, 422 U.S. 490, 498, 95 S.
12  Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975).  A plaintiff without Article III standing
13  presents no "'case or controversy,' and an Article III federal court therefore lacks
14  subject matter jurisdiction over the suit."  Cetacean Cmty. v. Bush, 386 F.3d 1169,
15  1174 (9th Cir. 2004) (citation omitted).

16      To establish Article III standing, Plaintiff must first establish that it has
17  suffered an "injury in fact"—a harm that is actual or imminent, not conjectural or
18  hypothetical.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130,
19  2136, 119 L. Ed. 2d 351 (1992).  The injury in fact must constitute an "invasion of a
20  legally protected interest which is 'concrete and particularized.'"  Legal Aid Soc'y of
21  Haw. v. Legal Servs. Corp., 145 F.3d 1017, 1030 (9th Cir. 1998) (citation omitted).
22  Additionally, the injury in fact element "requires that the party seeking review be
23  himself among the injured."  Sierra Club v. Morton, 405 U.S. 727, 734, 92 S. Ct.
24  1361, 1366, 31 L. Ed. 2d 636 (1972).  Second, there must be causation—"'a fairly
25  traceable connection between the plaintiff's injury and the complained-of conduct of
26  the defendant.'"  Legal Aid Soc'y of Haw., 145 F.3d at 1030 (citation omitted).
27  Finally, there must be redressability—"a likelihood that the requested relief will

28

- 5 -

1  redress the alleged injury." Id.   To survive dismissal, the Plaintiff bears the burden

2  of establishing that it has satisfied each of the elements of constitutional standing,

3  and mere "labels and conclusions" are not enough.  See Bell Atl. Corp. v. Twombly,

4  127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).

5        **A.    Plaintiff Has Not Alleged An Injury Sufficient to Establish Standing**

6              **to Bring Its FHA Claims.**

7       Plaintiff alleges one injury in the SAC—that Defendants have purportedly

8  frustrated its mission and diverted its resources.  This injury is merely an abstract

9  social interest, and is not—as it must be to withstand scrutiny—sufficiently concrete

10  or demonstrable.  See Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S.

11  Ct. 1114, 1124-25, 71 L. Ed. 2d 214 (1982) (holding, in a racial steering case, that

12  plaintiff's six-month investigation, including use of testers, into defendant's rental

13  practices was a "concrete and demonstrable injury to the organization's activities—

14  with the consequent drain on the organization's resources" that established standing).

15  The SAC alleges only that Defendants' lending policies "***tend*** to frustrate the

16  association's mission, reduce contributions and divert its resources." (SAC ¶ 13)

17  (emphasis added.)[4]   It, however, fails to identify what resources Plaintiff has

18  diverted, or how it has diverted them.  Such terse, abstract allegations, without any

19  supporting facts, fall below the mark set by Havens Realty Corp., and the Ninth

20  Circuit has squarely rejected them as inadequate.  See Hood River County v. United

21  States, 532 F.2d 1236, 1239 (9th Cir. 1976) ("A general allegation . . . that they have

22

23  ───────────────────────

24  [4] Allegations that the Defendants' practices caused a reduction of contributions are attenuated and meritless.  The SAC fails to link any particular Defendant's alleged conduct with any individual's decision to reduce contributions to the Plaintiff.

25  Alleged reductions in voluntary contributions not linked to specific conduct cannot state a cognizable legal interest that supports standing.  See, e.g., Cmty. for Creative

26  Non-Violence v. Pierce, 814 F.2d 663, 669 (D.C. Cir. 1987) (rejecting as inadequate and too attenuated the alleged causal link between the alleged acts and, among other

27  injuries, a reduction in voluntary contributions and grants).

28

1  been adversely affected is insufficient" to confer standing on organizational

2  plaintiffs).

3      An organizational plaintiff, moreover, cannot rely on the prosecution of a legal

4  action to bootstrap its standing, as Plaintiff seeks to do here.  See, e.g., Walker v.

5  City of Lakewood, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001) ("[W]e agree that a

6  plaintiff cannot establish standing simply by filing its own lawsuit . . . ."); Spann v.

7  Colonial Vill., Inc., 899 F.2d 24, 27 (D.C. Cir. 1990) ("An organization cannot, of

8  course, manufacture the injury necessary to maintain a suit from its expenditure of

9  resources on that very suit.").

10
11
   **B.    Plaintiff Never Applied For Credit From Any Defendant And Lacks
          Standing To Assert a Claim Under the ECOA and Civil Rights Act.**

12     The Plaintiff's ECOA and Civil Rights Act claims must be dismissed because,

13  even if it pleaded facts sufficient to establish an injury-in-fact from the Defendants'

14  conduct—which it has not done—such an injury still falls outside the zone of

15  interests these statutes protect.  See Valley Forge Christian Coll. v. Ams. United For

16  Separation Of Church & State, Inc., 454 U.S. 464, 474-475, 102 S. Ct. 752, 760, 70

17  L. Ed. 2d 700 (1982).   Prudential limitations preclude a court from exercising

18  jurisdiction over an otherwise sufficient Article III injury when that injury falls

19  outside "the zone of interests" the statute at issue was designed to protect.  Id.

20  (citation omitted) (explaining courts do not do so in order to avoid "adjudicating

21  'abstract questions of wide public significance' which amount to 'generalized

22  grievances,' pervasively shared and most appropriately addressed in the

23  representative branches").

24     The ECOA's zone of interests is limited to "***applicants***" for credit.

25  Specifically, the ECOA makes it "unlawful for any creditor to discriminate against

26  any ***applicant***, with respect to any aspect of a credit transaction . . . on the basis of

27  race . . . ."  15 U.S.C. § 1691(a)(1) (emphasis added).   "***Applicant***" is defined under

28

- 7 -

1   the statute as "any person who *applies* to a creditor directly for an extension,

2   renewal, or continuation of credit, or *applies* to a creditor indirectly by use of an

3   existing credit plan for an amount exceeding a previously established credit limit."

4   15 U.S.C. §§ 1691a (emphasis added); see also 12 C.F.R. § 202.2(e).  The ECOA's

5   civil remedies further underscore that the statute's anti-discrimination protections

6   extend only to "*aggrieved applicants*"—which the Plaintiff is not.   15 U.S.C.

7   §§ 1691e(a)-(c) (emphasis added).

8        The SAC does not allege that the Plaintiff is an "*applicant*," aggrieved or

9   otherwise.    Plaintiff, therefore, lacks standing to pursue its ECOA claim.    See

10  Rainbow Push Coal. v. AmSouth Bank, 2005 WL 637834, at *2 (M.D. Tenn. Mar.

11  15, 2005) (organization that did not apply for credit with defendant "does not fall

12  within the zone of interests Congress meant to protect when enacting the ECOA");

13  Evans v. First Fed. Sav. Bank of Ind., 669 F. Supp. 915, 922 (N.D. Ind. 1987)

14  (motion to dismiss granted because the ECOA is "meant to protect those individuals

15  *who actually apply for credit*") (emphasis added).  The Court, thus, should dismiss

16  Plaintiff's ECOA claims.

17       As with the ECOA, prudential limitations on standing will preclude claims

18  under Sections 1981 and 1982 of the Civil Rights Act when a plaintiff—as here—

19  fails to show its alleged injury is within the zone of interests these provisions protect.

20  See Saunders v. Gen. Servs. Corp., 659 F. Supp. 1042, 1054 (E.D. Va. 1987).

21  Sections 1981 and 1982 of the Civil Rights Act protect—respectively—the right to

22  make and enforce contracts and to hold property free from racial discrimination.

23  Plaintiff, however, has not alleged it sought or made contracts for mortgage loans

24  with any Defendant.

25       In Saunders, a plaintiff organization sued apartment complex operators for

26  discriminatory advertising.  The court held that, even though the plaintiff met Article

27  III's standing requirements, prudential limitations on claims under Sections 1981 and

28

1   1982 precluded it from having standing.  Id. at 1054 (noting that "standing under the

2   Civil Rights Act is more limited [than the FHA]").   The court held the plaintiff

3   lacked standing after finding that the plaintiff suffered no denial of rights by

4   defendants' conduct when it merely claimed an indirect harm by defendants'

5   violation of the rights of others.  Id.

6        Analogous to Saunders, Plaintiff here makes no allegations that it interacted

7   with a single Defendant.   Instead, Plaintiff in this case presents only generalized

8   allegations of an indirect harm due to alleged violations of third-party rights, a

9   deficiency that warrants dismissal.

10       **C.    Plaintiff Fails to Allege Defendants' Conduct Caused Its Injuries.**

11       Even if the Court were to find that the Plaintiff satisfied both an Article III

12  injury and relevant zone of interest requirements, it still should dismiss the SAC

13  because it contains no facts that show any Defendant's conduct *caused* the Plaintiff's

14  alleged injury.  Warth, 422 U.S. at 490.  Indeed, the Plaintiff alleges *no* facts to show

15  it diverted resources due to any particular Defendant's alleged conduct.  The SAC

16  merely alleges that Defendants, collectively, "*tend*" to frustrate the association's

17  mission and divert its resources.   Courts have rejected similarly vague allegations.

18  See, e.g., Situ v. Leavitt, No. C06-2841 TEH, 2006 WL 3734373, at *10 (N.D. Cal.

19  Dec. 18, 2006).

20       In Situ, organizational plaintiffs alleged only that they had to divert resources

21  to address enrollment and subsidy issues with the challenged Medicare-related

22  medical benefits program.   The court observed that it was unclear if plaintiff's

23  diversion of resources resulted from the alleged conduct of the defendants or, as was

24  more likely, merely from the enactment of a complex new benefits program.  Id.

25  Similarly, the Plaintiff here has failed to allege that its purported diversion of

26  resources is due to Defendants' alleged conduct, rather than, for example, new or

27  added demands for service its constituents have placed on it, or other reasons.  Given

28

- 9 -

1  that the SAC is bereft of concrete facts that show even a single Defendant caused

2  Plaintiff's alleged injury, the Plaintiff cannot establish its standing.

3  **II.     PLAINTIFF LACKS ASSOCIATIONAL STANDING TO MAINTAIN**

4  **THIS ACTION IN A REPRESENTATIVE CAPACITY.**

5       Associational standing is a narrow and limited exception to the general rule

6  that litigants must assert their own rights.  Black Faculty Ass'n of Mesa Coll. v. San

7  Diego Cmty. Coll. Dist., 664 F.2d 1153, 1156 (9th Cir. 1981).   To establish

8  associational standing, an organizational Plaintiff must show:  (1) its members would

9  have standing to sue in their own right; (2) the interests it seeks to protect are

10  relevant to its purpose; ***and*** (3) neither its claim asserted, nor the relief it seeks,

11  requires its members to participate in the suit.   Hunt v. Wash. State Apple Adver.

12  Comm'n, 432 U.S. 333, 333, 97 S. Ct. 2434, 2436, 53 L. Ed. 2d 383 (1977).  Failure

13  to satisfy even one element is fatal, and Plaintiff here has failed to satisfy two

14  required elements.

15       **A.     By Not Identifying A Member With Standing To Sue Each**

16       **Defendant, Plaintiff Fails To Meet Hunt's First Required Element.**

17       Plaintiff fails to satisfy the first prong of the well-established Hunt test

18  because the SAC neither identifies a member with individual standing, nor provides

19  a way for the Court to determine whether such a member exists.  See Bayaa v.

20  United Airlines, Inc., 249 F. Supp. 2d 1198, 1203-04 (C.D. Cal 2002) (granting

21  motion to dismiss on these grounds).  In the Bayaa matter, plaintiffs Bayaa and the

22  American-Arab Anti-Discrimination Committee ("ADC") sued United Airlines

23  alleging discriminatory security profiling.  ADC claimed it had over 60 documented

24  incidents of alleged racial discrimination against Arab-Americans by domestic and

25  foreign airlines, 11 of which related to United Airlines' conduct, and that

26  "thousands" of its members experienced discrimination similar to plaintiff Bayaa's

27  experience.

28

- 10 -

1   This Court granted United Airlines' motion to dismiss, holding that ADC
2   "failed to allege standing for one or more of its members 'in their own right.'" <u>Id.</u> at
3   1203.  As the Court explained:

4       [ADC] cannot seek relief from Defendants on behalf of American-
5       Arabs all over the world who have allegedly been discriminated against
        on all major airlines at various times, or on behalf of non-member
6       passengers.   Such allegations are specifically prohibited by the
        constitutional requirements of injury-in-fact and causation.   Thus,
7       because Plaintiff ADC has failed to establish standing of its members
8       'in their own right,' ADC cannot claim representational standing.

9   <u>Id.</u> at 1204.   The Court also held that the complaint's reference to the 11 Arab-
10  Americans who were allegedly discriminated against by United Airlines was
11  insufficient because the ADC did not allege that those individuals were its members.
12  <u>Id.</u> at 1204.   Importantly, the Court held that "[r]eports and statistics detailing 'air
13  carriers discriminating' against passengers of Arab and Middle Eastern descent . . .
14  do nothing to bolster a claim that <i>United Airlines</i> caused the injuries alleged to be
15  suffered by 'thousands' of ADC 'members.'"   <u>Id.</u> at 1204 (emphasis in original).
16  That these decisions required the identification of a member to satisfy the first prong
17  of the <u>Hunt</u> test pre-<u>Twombly</u>, which imposes more exacting pleading requirements,
18  underscores the need for such identification here.

19      As in <u>Bayaa</u>, the Plaintiff fails to adequately plead that even one of its
20  members has standing.   Instead, the SAC includes only a single and bald allegation
21  that: "Members of the NAACP have been injured in fact by each Defendant as
22  complained herein."  (SAC ¶ 14.)   The SAC identifies no members among the class
23  of borrowers it purports has been injured, and offers no description of their
24  "injuries."   It fails to state who exactly inflicted these injuries.   And, it fails, even in a
25  conclusory manner, to state that the Court can redress these injuries.   Plaintiff, thus,
26  completely fails to show its members enjoy standing in their own right, in violation
27  of both <u>Hunt</u> and <u>Twombly</u>'s pleading requirements, which reject "conclusions, and

28

1  [] formulaic recitation[s]" as insufficient for notice pleading.  Twombly, 127 S. Ct. at

2  1964-65.

3    **B.    Plaintiff's Request for Monetary Relief and the Nature of Its Claims**
      **Violates Hunt's Third Prong, Without Member Participation.**

4

5         Associational standing is *never* appropriate in an action—class or otherwise—

6  in which an organization seeks damages on behalf of its members.   Claims for

7  monetary relief require individualized proof.  See United Union of Roofers No. 40 v.

8  Ins. Corp. of Am., 919 F.2d 1398, 1400 (9th Cir. 1990) ("[C]laims for monetary

9  relief necessarily involve individualized proof and thus the individual participation

10 of association members, thereby running afoul of the third prong of the Hunt test.");

11 Bano v. Union Carbide Corp., 361 F.3d 696, 714 (2nd Cir. 2004); Nat'l Fed'n of the

12 Blind v. Target Corp., No. C. 06-1802, 2007 WL 2846462, at *6 (N.D. Cal. Oct. 2,

13 2007) ("Certainly, it is unlikely, if not impossible, that organizational plaintiffs

14 would have standing to pursue damages claims because the form of relief necessarily

15 requires the participation of the individual members.") (citation omitted).

16         According to the SAC, "[t]he NAACP brings this class action seeking

17 declaratory, *monetary* and injunctive relief based upon the Fair Housing Act, the

18 Equal Credit Opportunity Act and the Civil Rights Act."  (SAC ¶ 11) (emphasis

19 added.)  Each subclass, moreover, alleges it suffered "economic injury," (See, e.g.,

20 SAC ¶¶ 74, 86, and passim) and has "been actually damaged."  (SAC ¶¶ 81, 91 and

21 passim.)  Plaintiff cannot seek actual damages for an economic injury unless its

22 members participate in this suit—which they do not.  Thus, Plaintiff fails to satisfy

23 Hunt's third requirement.

24         Even if the SAC did not request actual damages, its request for extraordinary

25 equitable relief including restitution and disgorgement, nevertheless, requires its

26 members to participate because only they are alleged to be in privity with the

27 Defendants.  Smith v. Pac. Props. & Dev. Corp., 358 F.3d 1097, 1106 (9th Cir.

28

- 12 -

1   2004).    In Smith, the organizational plaintiff sought "disgorgement of unjust
2   enrichment" for its claim that defendant violated the Fair Housing Amendment Act
3   by not designing certain developments to accommodate disabled persons.    The
4   district court dismissed the claim and held that a plaintiff may not "properly seek to
5   disgorge an entity with whom they are not in privity."   Id. at 1106.   The Ninth
6   Circuit affirmed, adding that "the remedy of disgorgement only arises where a prior
7   relationship between the parties subject to and benefitting from disgorgement
8   originally resulted in unjust enrichment."   Id.   The court further explained that,
9   because the plaintiff had no prior relationship with the defendants, it was not "the
10  rightful recipient of whatever funds could be disgorged from [defendants]," and that
11  the issue of the plaintiff's associational standing was irrelevant.   Id.

12      As in the Smith decision, the SAC does not assert or even suggest that the
13  Plaintiff was, at any time, in privity with any Defendant.   Plaintiff does not allege it
14  applied for a mortgage, obtained a mortgage, or interacted with any Defendant.
15  Plaintiff, thus, is not the "rightful recipient" of any allegedly ill-gotten funds and
16  lacks standing to seek them.

17      Finally, regardless of the relief the Plaintiff seeks, its discrimination
18  allegations require member participation.   See Bano, 361 F.3d at 714 (organization
19  "lacks standing to assert claims of injunctive relief on behalf of its members where
20  'the facts and extent' of the injury that gives rise to the claims for injunctive relief
21  'would require individualized proof'") (citation omitted); Rent Stabilization Ass'n v.
22  Dinkins, 5 F.3d 591, 596 (2nd Cir. 1993); Am. Baptist Churches v. Meese, 712 F.
23  Supp. 756, 765-66 (N.D. Cal. 1989).    In Rent Stabilization, an association
24  representing landlords sought to enjoin the city's rent stabilization scheme as an
25  unconstitutional taking.   Plaintiff argued that it satisfied Hunt's third prong by
26  seeking only declaratory and injunctive relief.   5 F.3d at 596.   The court, however,
27  explained that "the relief sought is only half of the story" because associational

28

1   standing is not established "unless '*neither the claim asserted* nor the relief requested
2   requires the participation of individual members in the lawsuit.'" Id. (quoting Hunt,
3   432 U.S. at 343) (emphasis in original).   The Court held that plaintiff's claim
4   required it to "engage in an *ad hoc* factual inquiry for *each* landlord who alleges that
5   he has suffered a taking;" thus, the association lacked representative standing.  Id.

6   In American Baptist Churches, the court also ruled that the plaintiffs lacked
7   associational standing when the complaint allegations, which challenged certain
8   prosecutions for harboring illegal aliens, required individualized proof.  712 F. Supp.
9   at 765-66.   Applying Hunt, the Court held that the claims placed in issue "the
10   motivation" of undocumented aliens to enter the country and that, therefore, "[a]s a
11   component of their claim, plaintiffs must prove that these aliens entered this country
12   to escape persecution . . . ." Id. at 766.  The Court dismissed the organization's
13   claims, concluding that "[b]ecause the participation of individual members is
14   required, the plaintiff refugee organizations lack associational standing to pursue
15   these claims on their members' behalf." Id.

16   Like these cases, Plaintiff's claims here require member participation.  As
17   required elements of its claims, Plaintiff must show, inter alia, as to each Defendant,
18   that: at least one of its members applied for credit with each Defendant, that the
19   member was qualified for credit, and that a Defendant either improperly rejected or
20   offered less favorable loan terms relative to a similarly qualified Caucasian borrower
21   of that Defendant.  See Gamble v. City of Escondido, 104 F.3d 300, 305 (9th Cir.
22   1997); Pfaff v. HUD, 88 F.3d 739, 745 (9th Cir. 1996).  Simply put, Plaintiff cannot
23   establish, nor can the Court assess, its discrimination claims without the details of
24   each member's credit transaction.   This inquiry is particularized, and requires
25   member participation from the outset.  The Court, thus, must dismiss this action with
26   prejudice.

27

28

**III.   PLAINTIFF HAS FAILED TO STATE A CLAIM BECAUSE ITS ALLEGATIONS ARE INSUFFICIENT UNDER CONTROLLING SUPREME COURT PRECEDENTS.**

Even if the Court has subject matter jurisdiction over the SAC (and the Defendants strongly assert it does not), Plaintiff has failed to state a claim.  Indeed, despite both unequivocal cautions from the Supreme Court in the last two years that the machinery of the federal courts should not be invoked in cases like this unless the accuser brings a focused and specific claim, Smith v. City of Jackson, 544 U.S. 228, 241, 125 S. Ct. 1536, 1545, 161 L. Ed. 2d 410 (2005), and the Supreme Court's recent pronouncement that a complaint must contain enough "factual allegations" to "raise a right to relief above the speculative level," Twombly, 127 S. Ct. at 1964-65, the Plaintiff has presented a complaint that is nonspecific, and conclusory.  The SAC falls woefully short of the basic requirement that a complaint set forth a "statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

**A.   The SAC Lumps Every Defendant Together, and So States No Claim Against Any Of Them.**

Although the SAC levels the serious charge of racial discrimination in subprime lending, it is devoid of any factual allegations of specific conduct by any particular Defendant, of any individual Defendant's specific policies or practices, of any discriminatory impact in any individual Defendant's subprime loan population, and of any particularized allegation of any Defendant's discriminatory intentions. Instead, the SAC lumps all the Defendants together, alleging that each did exactly the same thing and has exactly the same policies and practices.  In a transparent attempt to cover up the deficiencies of the SAC with heft, Plaintiff breaks out the pleading as to each Defendant to assert separate sub-classes.  But, the nearly 800 paragraphs that set forth the claims of each sub-class turn out to be 16 repetitions of the *exact same 48 paragraphs, containing the same allegations, and using the*

- 15 -

1  ***exact same words*** (changing only the name of each Defendant, as defined in the
2  SAC).

3      Plaintiff's generalized pleading simply does not comply with the dictates of
4  either Rule 8 or the controlling case law.  This is because each Defendant has no fair
5  or meaningful notice of the specific conduct that it engaged in as part of the alleged
6  discriminatory lending practices that purportedly impacted its borrowers.  Twombly,
7  127 S. Ct. at 1964-65.  Alleging that all the Defendants did precisely the same thing
8  is to allege nothing specific about any of them.

9      That this prolix complaint nevertheless is not sufficiently particularized is
10  perhaps best understood by comparing the FAC and the SAC.  The FAC consisted of
11  503 paragraphs and 104 pages, and rested chiefly on liability allegations that lumped
12  a slightly different collection of 18 defendant financial institutions together as
13  "Defendants," and alleged, over 22 paragraphs, that "Defendants" all did the same
14  things.  (FAC ¶¶ 50-71.)  Following a "meet and confer" among counsel concerning
15  a motion to dismiss Defendants were preparing that addressed these types of
16  deficiencies, the NAACP took virtually the same 22 paragraphs and re-alleged them,
17  only this time using each Defendant's name.  (E.g., SAC ¶¶ 49-70.)  The only
18  apparent change was to include identical allegations (once for each defendant) of
19  2006 census data of household income levels.  (Compare FAC ¶ 69 with SAC ¶ 68.)
20  This exercise made the pleading longer, but not more specific.  Indeed, by its
21  repetition, the SAC and the FAC suffer from the same defect—namely, treating a
22  host of disparate parties identically without explanation.  Appalachian Enters., Inc. v.
23  ePayment Solutions, Ltd., No. 01-CV-11502 (GBD) 2004 WL 2813121, at *6
24  (S.D.N.Y. Dec. 8, 2004); In re McKesson HBOC, Inc. ERISA Litig., No. C00-
25  20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002).

26      This pleading deprives each Defendant of a fair and meaningful opportunity to
27  defend itself.  Fed. R. Civ. P. 8(a); ePayment Solutions, Ltd., 2004 WL 2813121, at

28

- 16 -

1  *6.   The Supreme Court has made clear that Rule 8's "showing" requirement

2  necessitates that a plaintiff set forth "[f]actual allegations [that are] enough to raise a

3  right to relief above the speculative level . . . on the assumption that all the

4  allegations in the complaint are true (even if doubtful in fact)."  <u>Twombly</u>, 127 S. Ct.

5  at 1964-65.   A complaint without factual allegations specific to a defendant (other

6  than allegations identifying it as party), such as the SAC here, fails to meet this

7  standard (particularly given Plaintiff has already amended its operative pleading to

8  address such defects) and must be dismissed with prejudice.  <u>Id.</u>

9       In <u>Twombly</u>, the Supreme Court considered and rejected a similarly deficient

10  complaint.   There, the complaint contained only conclusory allegations that the

11  defendants had entered into "agreements" to refrain from competing against each

12  other and had engaged in "parallel conduct" unfavorable to competition, in violation

13  of the Sherman Act's prohibition against a "contract, combination . . . or conspiracy,

14  in restraint of trade or commerce."  <u>Twombly</u>, 127 S. Ct. at 1961-62.  The Supreme

15  Court held that the complaint failed to state a claim under the Sherman Act because

16  it lacked specific factual allegations that would suggest that the defendants had

17  entered into an agreement in restraint of trade.  <u>Id.</u> at 1961, 1965.   The Court's

18  decision was based, in part, upon its recognition that defending even "anemic cases"

19  is "expensive."  <u>Id.</u> at 1967.  And, based upon this recognition, the Court held that

20  Rule 8's pleadings requirements serve a gatekeeper function, vesting a district court

21  with "'the power to insist upon some specificity in pleading before allowing a

22  potentially massive factual controversy to proceed.'"  <u>Id.</u> at 1967 (citation omitted).

23  This Court should exercise that power here, and not allow this lawsuit alleging wide-

24  ranging discrimination by 18 different named Defendants to proceed in absence of

25  specific factual allegations to sustain it.

26

27

28

**1**
**2**

### B.    Plaintiff Has Failed to State a Disparate Impact Claim Under Its First and Second Causes of Actions.

**3**    Plaintiff's FHA and ECOA counts present "disparate impact" claims, that

**4** Defendants' facially neutral policies and practices "have a disproportionately adverse

**5** effect on African Americans compared with similarly situated Caucasian applicants."

**6** (E.g., SAC ¶ 77.)  See, e.g., Int'l Bhd. of Teamsters v. United States, 431 U.S. 324,

**7** 335, n.15, 97 S. Ct. 1843, 1854, 52 L. Ed. 2d 396 (1977).  The SAC does not state

**8** such a claim because it is comprised of nothing more than broad and vague

**9** allegations, ignoring repeated directions from the Supreme Court that complaints of

**10** racial discrimination must be specific, targeted, and plausible.  City of Jackson, 544

**11** U.S. at 241; Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657, 109 S. Ct. 2115,

**12** 2125, 104 L. Ed. 2d 733 (1989), superseded on other grounds by statute, Civil Rights

**13** Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074; Watson v. Fort Worth Bank &

**14** Trust, 487 U.S. 977, 991-93, 108 S. Ct. 2777, 2787-88, 101 L. Ed. 2d 827 (1988).

**15** The Court requires such specificity because otherwise there is an intolerable risk that

**16** an advocate can abuse the disparate impact theory of recovery by providing vague

**17** allegations or proof where chance, unexplained coincidence, or other factors, rather

**18** than the defendant's conduct, are the real cause of any disparities.  Id.

**19**    For a disparate impact case to be "plausible" (Twombly, 127 S. Ct. at 1966),

**20** NAACP must set forth, inter alia, (1) a ***specific and clearly delineated practice or***

**21** ***policy*** adopted by a defendant, (2) a ***disparate impact*** on a protected group, and (3)

**22** facts demonstrating a ***causal connection*** between the specific challenged practice or

**23** policy and the alleged disparate impact.  Wards Cove, 490 U.S. at 657-58; City of

**24** Jackson, 544 U.S. at 241; Paige v. California, 291 F.3d 1141, 1144-45 (9th Cir.

**25** 2002).  Plaintiff's SAC fails to allege any of these required elements.

**26**                    ### 1.    Plaintiff Fails to Allege an Actionable Policy.

**27**    As the basis for its claim, Plaintiff inaccurately alleges that all the Defendants

**28**
- 18 -

have five identical practices:

> 1. Defendants "market[ed] subprime residential loan products directly to consumers, without providing applicants with sufficient information on how to purchase prime residential mortgage products . . . ;"
>
> 2. Defendants "market[ed] residential mortgage loans that have 'teaser' rates or the initial rates for 'Option ARM' loans;"
>
> 3. Defendants "provid[ed] financial incentives for mortgage brokers to steer consumers to subprime residential mortgage products in lieu of prime residential mortgage products . . . ;"
>
> 4. Defendants did "not provid[e] meaningful review of loan applications to determine whether the applicant qualifies for a prime residential mortgage product . . . ;" and
>
> 5. Defendant "evaluat[ed] each applicant's ability to pay based upon only the lower initial rate, and not [any] subsequent adjusted higher rate that will be due under the loan."

(E.g., SAC ¶¶ 76, 78, 88-89) (allegations against Ameriquest.)   None of these asserted policies are sufficient to support Plaintiff's FHA and ECOA claims.

The first two of the alleged 'policies,' concern how loans were "marketed," and are incomprehensible, as it is not at all clear what Plaintiff means by 'marketing.'   Each also is too vague to support a claim.   A plaintiff bringing a disparate impact case must "isolat[e] and identify[] the specific . . . practices" that it contends cause discriminatory effects.   Watson, 487 U.S. at 994; see also City of Jackson, 544 U.S. at 241; Llamas v. Butte Cmty. Coll. Dist., 238 F.3d 1123, 1127 (9th Cir. 2001).   That Defendants "market[ed]" products and supposedly failed to provide "sufficient information" are not allegations of specific policies, and are too generalized to state a claim.   Stout v. Potter, 276 F.3d 1118, 1124 (9th Cir. 2002).

The third alleged policy concerns "financial incentives" to mortgage brokers. Plaintiff alleges no facts about the actual, applicable compensation policy of any one Defendant, and pleads no specifics as to what the "financial incentives to steer customers" were.   Again, without specifics, Plaintiff has done no more than allege a generalized policy insufficient to state a disparate impact claim.   Stout, 276 F.3d at

- 19 -

1  1124.

2      The two remaining alleged policies, concerning loan review and evaluation,

3  also allege nothing specific to any Defendant.  Plaintiff's assertion that "Defendants"

4  provide no "meaningful" review of loan applications is, again, too vague under

5  Supreme Court precedent.   The alleged failure of Defendants to evaluate an

6  applicant's ability to pay based on "the subsequent higher adjusted rate" is deficient

7  because it does not include details showing a "plausible" basis for a claim to

8  proceed.

9      Courts frequently dismiss cases in which plaintiffs, as here, fail to plead an

10 alleged policy with specificity.  See, e.g., Syverson v. Int'l Bus. Machs. Corp., No.

11 C-03-04529, 2007 WL 2904252, at *6 (N.D. Cal. Oct. 3, 2007).[5]  As the Supreme

12 Court held in Twombly, a district court "must retain the power to insist upon some

13 specificity in pleading before allowing a potentially massive factual controversy to

14 proceed."  Twombly at 1967 (quotation omitted).

15           **2.    Plaintiff Fails to Allege a Disparate Impact.**

16     Plaintiff's FHA and ECOA claims are also deficient because the complaint

17 fails to allege specific facts showing a disparate impact as to a particular protected

18 class with respect to loans made by any individual Defendant.  See Watson, 487 U.S.

19 at 994-95; Wards Cove, 490 U.S. at 657.   Plaintiff attempts to plead a disparate

20 impact based solely upon "statistical analysis" of ***aggregate industry data*** by the

21 Federal Reserve and various housing advocate groups.  (SAC ¶¶ 6-8, 44-48, and 58-

22 64.)  But, this analysis fails to state a disparate impact claim because it is not specific

23 to any one of the Defendants or those who borrowed from them.  The SAC contains

24 

25 
[5]  See  also  Caputo-Conyers  v.  Berkshire  Realty  Holdings,  LP,  No.
6:05CV341ORL31KRS, 2005 WL 1862697 (M.D. Fla. Aug. 2, 2005); Kulkarni v.
City Univ. of N.Y., No. 01 CIV 10628, 2002 WL 1315596, *1-2 (S.D.N.Y. June 14,

26 2002); Rodriguez v. Beechmont Bus Serv., Inc., 173 F. Supp. 2d 139, 148 (S.D.N.Y.
2001); Burrell v. State Farm Fire & Casualty Co., No. CIV 5733, 2001 WL 797461,

27 *10  (S.D.N.Y. July 12, 2001).

28

no allegations about the terms of any specific subprime loan made by any Defendant to any borrower.  Nor does it contain any statistical information about loans made by any individual Defendant.  Such defendant-specific factual allegations are essential for the Court to evaluate whether each individual Defendant is treating similarly-situated borrowers differently.  The aggregate data from as many as 9,000 lenders that Plaintiff cites does not establish that any particular lender engages in discrimination. The SAC, thus, fails to demonstrate a "plausible" right to relief.

Even if the Court could look beyond this fatal flaw, it is not "plausible" on the face of the SAC that Plaintiff could prevail because the cited data suggests only, at most, that African-Americans *as a group* obtain higher-priced subprime loans more frequently than Caucasians *as a group*.  But, Plaintiff's theory is not that Defendants are liable for making more higher-priced loans to African-Americans generally, so the data is irrelevant.  Instead, Plaintiff's theory is that two smaller, sub-groups of African-Americans are disadvantaged by obtaining subprime loans of two types: (1) African-Americans who should have qualified for prime loans, but allegedly obtained higher-cost subprime loans (the "prime qualified"), (e.g., SAC ¶¶ 3, 10, 36, 58), and (2) African-Americans who should not have qualified for loans at all, but obtained subprime loans (the "unqualified").  (e.g. SAC ¶¶ 3, 36, 69.)  The cited data patently fails to support "plausible" causes of action concerning whether prime qualified or unqualified African-American borrowers received more subprime loans of any type.

Plaintiff's use of rhetoric to hide the defects in the cited studies is unavailing.  All but one of the studies are based on aggregate data, which Federal Reserve economists have concluded simply ***do not show disparate discriminatory impact***—a fact even Plaintiff concedes.  Avery et al., supra, at 345, 393 (Summer 2005); SAC ¶ 60.  This is because many of the factors that affect the type of loan available and its pricing are not captured or reported as part of this data.  Id.  The only factual

1  allegation based on data that purports to control for the missing factors, a 2006 study

2  by the advocacy group Center for Responsible Lending ("CRL"), (SAC ¶¶ 6 and 60-

3  64), falls far short of the Rule 8 mark because it is not lender-specific and does not

4  compare groups of "prime qualified" and "unqualified" borrowers.  As the CRL

5  study itself explains, it "was not large enough to control for metropolitan statistical

6  area or for individual lenders," and the "merged data . . . neither allows for an

7  evaluation of pricing disparities that includes the prime market, nor provides any

8  insight into how different borrowers end up with prime rather than subprime

9  lenders."  Debbie Gruenstein Bocian et al., <u>Unfair Lending: The Effect of Race and</u>

10 <u>Ethnicity on the Prices of Subprime Mortgages</u> (May 31, 2006) at 15, <u>available at</u>

11 http://www.responsiblelending.org/pdfs/rr011-Unfair_Lending-0506.pdf.

12      A disparate impact can only be proven by comparing those who are similarly-

13 situated.  <u>Wards Cove</u>, 490 U.S. at 651-53; <u>Moore v. Hughes Helicopters, Inc.</u>, 708

14 F.2d 475, 482 (9th Cir. 1983).  Plaintiff here makes the same mistake the Supreme

15 Court in <u>Wards Cove</u> found fatal to a disparate impact claim; it relies on statistical

16 comparisons of broadly-defined groups of people that do not mirror the composition

17 of the groups of persons allegedly harmed.  <u>See</u> <u>Wards Cove</u>, 490 U.S. at 651-53.

18 Despite this requirement, the SAC contains no allegation comparing outcomes for

19 two similarly-situated groups of prime qualified borrowers, or for two similarly-

20 situated groups of unqualified borrowers.  Moreover, the SAC itself defeats even the

21 grossly-broad comparison of Caucasians as a group to minorities as a group, when it

22 concedes that credit scores of Caucasians, as a group, are higher than those of

23 minorities, as groups.  To survive, the SAC must compare apples to apples, not

24 apples to oranges.  <u>See</u> <u>Collette v. St. Luke's Roosevelt Hosp.</u>, 132 F. Supp. 2d 256,

25 278 (S.D.N.Y. 2001).  Without that comparison, the SAC has not made out a

26 plausible claim and must be dismissed with prejudice.  <u>See, e.g.</u>, <u>Collette</u>, 132 F.

27

28

1  Supp. 2d 256, 278 (S.D.N.Y. 2001); <u>Johnson v. County of Nassau</u>, 480 F. Supp. 2d
2  581, 598-99 (E.D.N.Y 2007).

3          **3.     Plaintiff Fails to Allege a Causal Connection between
               Any Defendant's Policies and the Alleged Disparate
4               Impact.**

5          To meet the final element of a disparate impact claim, plaintiff must allege
6  that the challenged policy caused the perceived imbalance.   Merely showing a
7  bottom line disparity is not enough:

8          Respondents will . . . have to demonstrate that the disparity they
           complain of is the result of one or more of the [ ] practices that they are
9          attacking here, specifically showing that each challenged practice has a
           significantly disparate impact on [ ] opportunities for whites and
10         nonwhites.

11  <u>Wards Cove</u>, 490 U.S. at 657.  <u>See also</u> <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706,
12  712 (2d Cir. 1998).

13         Here, Plaintiff alleges, insufficiently, only a "bottom line . . . imbalance," with
14  no discernable connection between any particular Defendant's alleged policies and
15  that imbalance.  <u>Wards Cove</u>, 490 U.S. at 657.  It does not allege in any meaningful
16  way whether, or how, the five identified policies—rather than some other factors, or
17  chance—caused prime qualified African-Americans to obtain more subprime loans
18  than Caucasians, or caused more unqualified African-Americans to choose more
19  subprime loans than unqualified Caucasians.   Plaintiff's conclusory assertions of
20  causation (<u>e.g.</u>, SAC ¶¶ 81, 91) are not enough.   <u>Twombly</u>, 127 S. Ct. at 1966;
21  <u>Collette</u>, 132 F.Supp.2d at 278;  <u>Syverson</u>, 2007 WL 2904252, at *6; <u>Burrell v. State</u>
22  <u>Farm Fire & Casualty Co.</u>, No. CIV 5733, 2001 WL 797461, at *10 (S.D.N.Y. Jul.
23  12, 2001); <u>Trezza v. Hartford, Inc.</u>, No. 98 CIV 2205, 1998 WL 912101, at *8
24  (S.D.N.Y. Dec. 30, 1998).

25      **C.    Plaintiff Has Failed to State an Intentional Discrimination Claim.**

26         Plaintiff also alleges that Defendants engaged in intentional discrimination, in
27  violation of the Civil Rights Act.  (SAC, "Third Cause of Action.")  It is well settled

28                                      - 23 -

1 that the Civil Rights Act requires proof of intentional discrimination due to race, and
2 that disparate impact liability is not available.  See, e.g., Evans v. McKay, 869 F.2d
3 1341, 1344 (9th Cir. 1989).  Plaintiff, however, alleges intent only as a conclusion,
4 without supporting facts.  Notably absent is any specific factual assertion, for
5 example, that a single loan officer marked up an interest rate or made additional
6 charges as a result of racial animus, let alone that even one of the Defendants,
7 including many of the nation's largest lenders, consciously or deliberately decided to
8 discriminate against African-Americans nationwide.  A "formulaic recitation of the
9 elements of a cause of action" is inadequate to state a claim.  Twombly, 127 S. Ct. at
10 1964-65 & n.3.  For these reasons, Plaintiff's intentional discrimination claims also
11 must be dismissed with prejudice.

12 **IV.   NEITHER THE FHA NOR THE ECOA PERMITS DISPARATE**
13 **       IMPACT CLAIMS.**

14        Separate from Plaintiff's failure to properly plead its allegations in the SAC,
15 Plaintiff cannot state cognizable disparate impact claims under either the ECOA or
16 the FHA.  As the Supreme Court's recent decision in City of Jackson, 544 U.S. 228,
17 demonstrates, neither statute provides for liability under a disparate impact theory.

18        Under the City of Jackson opinion, an anti-discrimination statute's text, not a
19 broad reading of its purpose, determines whether it permits disparate impact claims.
20 In City of Jackson, the Court considered whether the Age Discrimination in
21 Employment Act ("ADEA") permits disparate impact claims.  Noting the similarity
22 between the ADEA and Title VII, the Court reviewed its Title VII jurisprudence for
23 guidance—and, in the process, emphasized that Title VII disparate impact
24 jurisprudence is firmly rooted in the statutory text.  Justice Stevens' plurality opinion
25 clarifies that the Court's holding in Griggs v. Duke Power Co., 401 U.S. 424, 91 S.
26 Ct. 849, 28 L. Ed. 2d 158 (1971) (construing Title VII to permit disparate impact
27 liability), was based on the "interpretation of § 703(a)(2) of Title VII."  City of

28
- 24 -

1 Jackson, 544 U.S. at 234.  The Court acknowledged that its opinion in Griggs relied

2 in part on the purposes of Title VII, but explained it has "subsequently noted" that its

3 Title VII disparate impact jurisprudence derives from the text of

4 § 703(a)(2) of Title VII, not an analysis of the Act's overall purposes.  Id. at 235.  By

5 clarifying that its holding in Griggs was rooted in the text of Title VII rather than

6 being implied by the statute's overall purposes—and by basing its disparate impact

7 analysis under the ADEA on the text of that statute—City of Jackson reaffirms the

8 primacy of the statutory text in construing anti-discrimination statutes.

9 　　　The Court's analysis in City of Jackson shows that neither the text of the FHA,

10 nor the text of ECOA, permits disparate impact claims.  The Court, thus, explained

11 that disparate impact claims under Title VII are permitted by the "effects" language

12 of § 703(a)(2).  § 703(a) provides:

13 　　　(a) It shall be an unlawful employment practice for an employer -

14
15 　　　(1) to fail or refuse to hire or to discharge any individual, or otherwise
　　　to ***discriminate against any individual*** with respect to his
16 　　　compensation, terms, conditions, or privileges of employment, ***because
　　　of such individual's*** race, color, religion, sex, or national origin; or

17 　　　(2) to limit, segregate, or classify his employees or applicants for
　　　employment in any way which would deprive or tend to deprive any
18 　　　individual of employment opportunities or ***otherwise adversely affect***
　　　his status as an employee, because of such individual's race, color,
19 　　　religion, sex, or national origin.

20 Title VII § 703(a), 42 U.S.C. § 2000e-2(a) (emphasis added).  The Court, thus, held

21 that the text of ADEA § 4(a)(2)—which mirrors Title VII § 703(a)(2) and prohibits

22 actions that "otherwise adversely affect" the employee's status—required it to

23 conclude that the ADEA permits disparate impact claims.  City of Jackson, 544 U.S.

24 at 235-38.  Central to its reasoning was that "the text focuses on the *effects* of the

25 action on the employee rather than the motivation for the action of the employer."

26 Id. at 236 (emphasis in original).

27 　　　In addition to explaining that Title VII § 703(a)(2) and ADEA § 4(a)(2) both

28

1  permit disparate impact claims, the Court clarified that subsection (a)(1) of each

2  statute—the subsection which both the FHA and ECOA mirror—does not.   The

3  Court noted that there are "key textual differences" between subsections (a)(1) and

4  (a)(2) of both Title VII § 703 and the ADEA § 4.  City of Jackson, 544 U.S. at 236

5  n.6.  Whereas Subsection (a)(2) permits disparate impact claims, the Court explained

6  that Subsection (a)(1) encompasses disparate treatment, but "***does not encompass***

7  ***disparate-impact liability***," and requires a showing of intent.  Id. at 236-38 & n.6

8  (emphasis added).  This is because "the focus of the paragraph is on the employer's

9  actions with respect to the targeted individual."  Id. at 236 n.6.  And, although the

10 Justices disagreed as to whether ADEA Section 4(a)(2) permits disparate impact

11 claims, the Court was ***unanimous*** that Section 4(a)(1) does not.  See id. at 236 n.6;

12 id. at 243 (Scalia, J., concurring) ("I agree with all of the Court's reasoning . . . .");

13 id. at 249 (O'Connor, J., dissenting) ("Neither petitioners nor the plurality contend

14 that the first paragraph, § 4(a)(1), authorizes disparate impact claims, and I think it

15 obvious that it does not.  That provision plainly requires discriminatory intent . . . .").

16    The Court's clarification of Title VII and the ADEA's disparate treatment and

17 impact provisions shows that neither the FHA, nor the ECOA, permits disparate

18 impact claims.  The language of ECOA § 701 and FHA § 805 mirror Title VII

19 § 703(a)(1) and ADEA § 4(a)(1), which permit disparate treatment claims, but not

20 disparate impact claims.  Compare Title VII, § 703(a)(1), 42 § U.S.C. 2000e-2(a)(1),

21 and ADEA § 4(a)(1), 29 § U.S.C. 623(a)(1), with ECOA § 701(a)(1), 15 U.S.C.

22 § 1691(a)(1), and FHA § 805(a), 42 U.S.C. 3605(a).  Moreover, neither the ECOA

23 nor the FHA has language focusing on the ***effects*** of actions comparable to the

24 language of Title VII § 703(a)(2) or ADEA § 4(a)(2) that supports disparate impact

25 claims.  This is demonstrated in the following table:

26

27

28

| Title VII | ADEA | ECOA | FHA |
|---|---|---|---|
| (a) It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to *discriminate against any individual* with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's* race, color, religion, sex, or national origin; | (a) It shall be unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual or otherwise to *discriminate against any individual* with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's* age; | (a) It shall be unlawful for any creditor to *discriminate against any applicant*, with respect to any aspect of a credit transaction—(1) *on the basis of* race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); | (a) It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to *discriminate against any person* in making available such a transaction, or in the terms or conditions of such a transaction, *because of* race, color, religion, sex, handicap, familial status, or national origin. |
| (a) It shall be an unlawful employment practice for an employer – (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or *otherwise adversely affect* his status as an employee, because of such individual's race, color, religion, sex, or national origin. | (a) It shall be unlawful for an employer- . . . (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or *otherwise adversely affect* his status as an employee, because of such individual's age . . . . | **None.** | **None.** |

These differences are dispositive of Congress's intent in enacting the ECOA and the FHA.  As the Court explained, "when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."  <u>City of Jackson</u>, 544 U.S. at 233-34.  On this basis, the Court concluded that an "effects" provision in the ADEA comparable to Title VII's "effects" provision meant Congress intended to permit disparate impact claims. <u>Id.</u> at 235-38.   In accordance with this rule of statutory construction, the

- 27 -

1   "discriminate against . . . because of/on the basis of" language in the FHA and
2   ECOA must have the same meaning as Title VII and the ADEA's identical language.
3   The Justices were *unanimous* that such language permits only disparate treatment
4   claims, not disparate impact claims.  This Court, therefore, must view the omission
5   of "effects" language from the FHA and ECOA, as intentional and conclusive that
6   neither the FHA nor ECOA permits disparate impact claims.  See Garcia v. Johanns,
7   444 F.3d 625, 633 n.9 (D.C. Cir. 2006) ("The Supreme Court has held that this
8   ['effects'] language gives rise to a cause of action for disparate impact discrimination
9   under Title VII and the ADEA.  ECOA contains no such language.").

10      The Supreme Court's interpretation of other anti-discrimination statutes
11  further demonstrates that neither the FHA nor the ECOA permits disparate impact
12  claims.  When the statutory text creates a cause of action based on the "effects" or
13  "results" of actions, the Court has held that the statute permits disparate impact
14  claims.  See, e.g., Griggs, 401 U.S. at 429-31 (Title VII); City of Jackson, 544 U.S.
15  at 232-35 (ADEA); Raytheon v. Hernandez, 540 U.S. 44, 53, 124 S. Ct. 513, 520,
16  157 L. Ed. 2d 357 (2003) (ADA, which mirrors Title VII).  In contrast, when the
17  statutory text lacks a provision creating a cause of action based on "effects" of
18  actions, the Court has held that the statute does not permit disparate impact claims.
19  See, e.g., Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 178, 125 S. Ct. 1497,
20  1506-1507, 161 L. Ed. 2d 361 (2005) (Title IX); Alexander v. Sandoval, 532 U.S.
21  275, 280-81, 121 S. Ct. 1511, 1516-1517, 149 L. Ed. 2d 517 (2001) (Title VI).

22      Plaintiff, likely, will argue that the purposes of the FHA and the ECOA
23  support the view that disparate impact claims are cognizable under both Acts and
24  that the Court should focus on the Acts' purposes rather than their text—but such an
25  argument begs the question of what Congress intended to prohibit.  The Court has
26  explained that the purpose of a statute includes both what it sets out to change *and*
27  what it resolves to leave alone, with the adopted statutory text being the best

28

1   evidence of that purpose.  See, e.g., Rodriguez v. United States, 480 U.S. 522, 526,

2   107 S. Ct. 1391, 1393, 94 L. Ed. 2d 533 (1987).  The plain language of each Act

3   prohibits only "discriminat[ion]"—not the disparate "effects" of facially neutral

4   actions—which shows that Congress intended both Acts to prohibit only intentional

5   discrimination.  As U.S. Solicitor General Fried stated in the amicus curiae brief

6   filed on behalf of the United States in Town of Huntington v. Huntington Branch,

7   NAACP, 488 U.S. 15, 109 S. Ct. 276, 102 L. Ed. 2d 180 (1988), "[t]he legislative

8   history [of the FHA] reinforces the understanding [from the text of the statute] that

9   Congress intended to require a showing of intentional discrimination."[6]  And, as the

10  Supreme Court has made clear, any interpretation of the FHA "that would proscribe

11  conduct by the recipient having only a discriminatory *effect* . . . do[es] not simply

12  'further' the purpose of [the statute]; [it goes] well ***beyond*** that purpose."  Alexander,

13  532 U.S. at 286 n.6 (citation omitted and emphasis in original).  The presence of

14  language supporting only disparate treatment—and not disparate impact—shows that

15  Congress did not intend either the FHA or the ECOA to permit disparate impact

16

17

18

19

20

21

22

23

24

25  ───────────────────

26  [6] Brief for United States as Amicus Curiae, Town of Huntington v. Huntington
    Branch, NAACP, 488 U.S. 15 (1988) (No. 87-1961) (arguing that the statutory text
27  "strongly suggests a requirement of discriminatory motivation"), available at
    http://www.usdoj.gov/osg/ briefs/1987/sg870004.txt.

28

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

1  claims.[7]  Because the FHA and the ECOA do not contain the required "effects"

2  language, the Court should dismiss Plaintiff's disparate impact claims with

3  prejudice.

4  **V.    PLAINTIFF'S FHA CLAIMS SHOULD BE DISMISSED BECAUSE**

5  **THEY ARE MUTUALLY EXCLUSIVE OF ITS ECOA CLAIMS.**

6       To the extent Plaintiff is entitled to any relief for its allegations of

7  discriminatory mortgage lending in this action—which it is not—the Court should

8  restrict Plaintiff's ability to proceed under both the ECOA and the FHA by

9  dismissing Plaintiff's FHA claim.  As Section 706(i) of the ECOA provides:

10       No person aggrieved by a violation of this title and by a violation of
11       section 805 of the Civil Rights Act of 1968 [Section 805 of the FHA]
         shall recover under this title and section 812 of the Civil Rights Act of
12       1968, if such violation is based on the same transaction.

13

14  _____

[7] Importantly, all existing Ninth Circuit disparate impact precedent to the contrary
15  borrows the disparate impact theory from Title VII cases.  See Keith v. Volpe, 858
    F.2d 467, 482-83 (9th Cir. 1988) (relying on precedent from other courts that
16  incorporated into the FHA the disparate impact theory from Title VII without
    properly considering the statutory language of the FHA); Miller v. Am. Express Co.,
17  688 F.2d 1235, 1239-40 (9th Cir. 1982) (relying on similarly flawed cases to reach
    the same result regarding the ECOA).  After the Supreme Court's clarification of its
18  Title VII jurisprudence in City of Jackson, which requires the presence of "effects"
    language in the statute, these holdings and their underpinnings are no longer valid.
19  Accordingly, they and their progeny "must be regarded as retaining no vitality."
    Limbach v. Hooven & Allison Co., 466 U.S. 353, 360-61, 104 S. Ct. 1837, 1842-
20  1843, 80 L. Ed. 2d 356 (1984).  This Court also cannot and need not reconcile a
    recent unpublished ruling by Judge Phillips in Garcia v. Countrywide Fin. Corp., No.
21  EDCV 07-1161-VAP (JCRx) (C.D. Cal. Jan. 15, 2008) (holding the FHA permits
    disparate impact claims in spite of City of Jackson), with the City of Jackson
22  decision.  In Garcia, Judge Phillips never addressed the Supreme Court's *unanimous*
    holding that the "discriminate against . . . because of" formulation—the only
23  formulation contained in the FHA—*cannot support disparate impact claims*.  Judge
    Phillips also relied on the purposes of the FHA rather than the text of the statute—an
24  invalid approach after City of Jackson.  These reasons, among others, show that
    Judge Phillips' holding is contrary to the FHA's text and City of Jackson.

25

26

27

28

- 30 -

1   ECOA § 706(i), (codified at 15 U.S.C. § 1691e(i)).[8]   The text and meaning of the

2   ECOA § 706(i) is plain, and most courts that have considered the provision have

3   confirmed that the ECOA and the FHA provide a Plaintiff with mutually exclusive,

4   and not alternative, rights of recovery.   See, e.g., Cooley v. Sterling Bank, 280 F.

5   Supp. 2d 1331, 1337 n.4 (M.D. Ala. 2003), aff'd, 116 Fed. App'x. 242 (11th Cir.

6   2004) ("Although the Plaintiff raises claims under both the ECOA and FHA, the

7   court notes that the Plaintiff would only be entitled to recovery under one statute.").

8   Accordingly, a Plaintiff that brings a claim under the ECOA, cannot also predicate a

9   companion claim on the same transaction or set of transactions under the FHA.

10   Plaintiff in this action seeks to do precisely this.   For this reason, the Court should

11   dismiss Plaintiff's FHA claim with prejudice.

## CONCLUSION

13   For all the foregoing reasons, the Defendants' motion should be granted

14   and Plaintiff's SAC should be dismissed with prejudice.

15

16

17

18

19

20

21

22   [8]  In 1976, Congress enacted ECOA § 706(i).   At that time, FHA Section 812
governed "Enforcement by Private Persons."   See Pub. L. No. 94-239 § 6, 90 Stat.
23   251, 254-55 (1976); Pub. L. No. 90-284 § 812, 82 Stat. 73, 88 (1968).   In 1988,
Congress amended the FHA and, among other changes, moved the section governing
24   "Enforcement by Private Persons" from Section 812 to Section 813.   See Pub. L. No.
100-430, § 8, 102 Stat. 1619, 1625 (1988).   The reference in ECOA § 706(i) has not
25   been updated to reflect this change, but it is clear that Congress intended § 706(i) to
reference the section of the FHA that addresses "Enforcement by Private Persons."
26   See, e.g., Estate of Kunze v. Comm'r, 233 F.3d 948, 953 (7th Cir. 2000) (holding
that a plainly erroneous cross-reference "can hardly be construed to have changed
27   the legislative intent . . . or to have affected the substantive rights [at stake].").

28

1

2    Dated: April 4, 2008                    SKADDEN, ARPS, SLATE, MEAGHER &
                                             FLOM LLP
3

4

5                                            By:    /s/ Raoul D. Kennedy
                                             _____
6                                            Raoul D. Kennedy (State Bar No. 40892)
                                             Four Embarcadero Center, Suite 3800
7                                            San Francisco, California  94111-4144
                                             415/984-6400 (Telephone)
8                                            415/984-2698 (Facsimile)
                                             rkennedy@skadden.com
9

10                                           Andrew L. Sandler
11                                           Benjamin B. Klubes
                                             Benjamin P. Saul
12                                           1440 New York Ave., N.W.
                                             Washington, DC 20005
13                                           202/371-7000 (Telephone)
                                             202/393-5760 (Facsimile)
14                                           asandler@skadden.com
15                                           bklubes@skadden.com
                                             bsaul@skadden.com
16

17

18                                           Attorneys for Defendants named as Bear
                                             Stearns Residential Mortgage Corporation
19                                           d/b/a Encore Credit, Fremont Investment &
                                             Loan, GMAC Mortgage Group, LLC, GMAC
20                                           ResCap, and National City Corporation

21

22

23

24

25

26

27

28
                                             - 32 -
     _____
     NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

1  Dated:  April 4, 2008                    BUCHALTER NEMER

2                                           By:   /s/ Bernard E. LeSage

3
                                            Bernard E. LeSage
4                                           Karen L. Stevenson
5                                           1000 Wilshire Boulevard
                                            Suite 1500
6                                           Los Angeles, CA 90017-2457
7                                           213/891-0700 (Telephone)
                                            213/896-0400 (Facsimile)
8                                           blesage@buchalter.com
9                                           kstevenson@buchalter.com

10                                          Attorneys for Defendant named as Ameriquest
11                                          Mortgage Company

12  Dated:  April 4, 2008                    MUNGER, TOLLES & OLSON LLP
13
                                            By:   /s/ Ronald K. Meyer
14
15                                          Ronald K. Meyer (State Bar No. 71944)
                                            355 South Grand Avenue, 35th Floor
16                                          Los Angeles, CA 90071-1560
17                                          213/683-9100 (Telephone)
                                            213/687-3702 (Facsimile)
18
19                                          Attorneys for WMC Mortgage, LLC,
20                                          successor-in-interest to Defendant named as
                                            WMC Mortgage Corporation
21
22
23
24
25
26
27
28
                                            - 33 -

1

2  Dated:  April 4, 2008                    REED SMITH LLP

3                                           By:   /s/ Tyree P. Jones, Jr.

4                                           Tyree P. Jones, Jr.
5                                           1301 K Street, N.W.
                                            Suite 1100 - East Tower
6                                           Washington, D.C. 20005
7                                           202/414-9296 (Telephone)
                                            202/414-9299 (Facsimile)
8                                           tpjones@reedsmith.com
9
                                            Leonard A. Bernstein
10                                          2500 One Liberty Place
11                                          1650 Market Street
                                            Philadelphia, PA 19103
12                                          215/851-8143 (Telephone)
13                                          215/851-1420 (Facsimile)
                                            lbernstein@reedmith.com
14
15                                          Mark S. Melodia
                                            136 Main Street, Suite 250
16                                          Princeton Forrestal Village
17                                          Princeton, NJ 08540
                                            609/520-6015 (Telephone)
18                                          609/951-0824 (Facsimile)
19                                          mmelodia@reedsmith.com
20
                                            Attorneys for Defendant named as First
21                                          Franklin Financial Corporation
22

23

24

25

26

27

28
                                  - 34 -

1

2  Dated:  April 4, 2008                    STROOCK & STROOCK & LAVAN LLP

3                                           By:    /s/ Julia B. Strickland

4                                           Julia B. Strickland
5                                           Stephen J. Newman
                                            Matthew D. Moran
6                                           2029 Century Park East
7                                           Los Angeles, CA 90067-3086
                                            310/556-5800 (Telephone)
8                                           310/556-5959 (Facsimile)
9
                                            Attorneys for Defendant named as HSBC
10                                          Finance Corporation
11
12 Dated:  April 4, 2008                    BUCKLEY KOLAR LLP

13                                          By:    /s/ Matthew P. Previn

14                                          Matthew P. Previn
15                                          Kirk D. Jensen
                                            1250 24th Street, N.W., Suite 700
16                                          Washington, D.C. 20037
17                                          202/349-8095 (Telephone)
                                            202/349-8080 (Facsimile)
18                                          mprevin@buckleykolar.com
19                                          kjensen@buckleykolar.com

20                                          Richard J. Sahatjian
21                                          2029 Century Park East, Suite 900
                                            Los Angeles, CA 90067
22                                          424/203-1000 (Telephone)
23                                          rsahatjian@buckleykolar.com

24                                          Attorneys for Defendant named as Accredited
25                                          Home Lenders, Inc.

26

27

28
                                           - 35 -

1   Dated:  April 4, 2008                O'MELVENY & MYERS LLP

2
                                          By:___/s/ Brian P. Brooks_____
3
4                                         Brian P. Brooks (State Bar No. 172151)
                                          1625 Eye Street, NW
5                                         Washington, DC 20006
                                          202/383-5127 (Telephone)
6                                         202/383-5414 (Facsimile)
7                                         bbrooks@omm.com

8                                         Elizabeth Lemond McKeen (State Bar No.
9                                         216690)
                                          610 Newport Center Drive, 17th Floor
10                                        Newport Beach, California  92660
                                          949/760-9600 (Telephone)
11                                        949/823-6994 (Facsimile)
12
13                                        Attorneys for Defendant named as Option One
                                          Mortgage Corporation
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          - 36 -

Dated:  April 4, 2008                    GOODWIN PROCTOR LLP

                                         By:  /s/ Brooks R. Brown

                                         Brooks R. Brown
                                         10250 Constellation Boulevard, 21st Floor
                                         Los Angeles, CA 90067
                                         310/788-5148 (Telephone)
                                         310/286-0992 (Facsimile)
                                         bbrown@goodwinproctor.com

                                         Thomas M. Hefferon
                                         901 New York Avenue, NW
                                         Washington, DC 20001
                                         202/346-4029 (Telephone)
                                         202/346-4444 (Facsimile)
                                         thefferon@goodwinproctor.com

                                         Attorneys for Defendant named as First
                                         Tennessee Bank d/b/a First Horizon National
                                         Corporation

Dated:  April 4, 2008                    MORRISON & FOERSTER LLP

                                         By:  /s/ Michael J. Agoglia

                                         Michael J. Agoglia
                                         Wendy M. Garbers
                                         425 Market Street
                                         San Francisco, CA 94105
                                         415/268-7000 (Telephone)
                                         415/268-7522 (Facsimile)
                                         magoglia@mofo.com

                                         Attorneys for Defendants named as
                                         Washington Mutual, Inc., Long Beach
                                         Mortgage Company, J.P. Morgan Chase &
                                         Co., and Chase Bank USA, NA

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS

Dated:  April 4, 2008

MCKENNA LONG & ALDRIDGE LLP

By:   /s/ Will S. Skinner

Will S. Skinner
444 South Flower Street, 8th Floor
Los Angeles, CA 90071
213/688-1000 (Telephone)
213/243-6330 (Facsimile)
wskinner@mckennalong.com

Attorneys for Defendant named as SunTrust
Mortgage

Dated:  April 4, 2008

KEESAL, YOUNG & LOGAN

By:   /s/ Stacey Garrett

Stacey Garrett
400 Oceangate, P.O. Box 1730
Long Beach, CA 90801-1730
562/436-2000 (Telephone)
stacey.garrett@kyl.com

Theodore V. Wells, Jr.
Joyce S. Huang
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
212/373-3000 (Telephone)
212/757-3990 (Facsimile)
twells@paulweiss.com
jhuang@paulweiss.com

Attorneys for Defendant named as
CitiMortgage

- 38 -

1

**ECF CERTIFICATION**

2          The filing attorney attests that he has obtained concurrence regarding the filing

3    of this document from the signatories to this document.

4

5    Dated:  April 4, 2008                    By:   /s/ Raoul D. Kennedy

6                                                   Raoul D. Kennedy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF JOINT MOTION AND JOINT MOTION TO DISMISS