Angela Ciccolo
(To be admitted *pro hac vice*)
General Counsel, NAACP
4805 Mt. Hope Dr.
Baltimore, MD 21215
Tel: (410) 580-5792
Fax: (410) 358-9350

Brian S. Kabateck (SBN 152054)         Austin Tighe (Admitted
Richard L. Kellner (SBN 171416)             *pro hac vice*)
Joshua H. Haffner (SBN 188652)         FEAZELL & TIGHE, LLP
KABATECK BROWN KELLNER LLP             6300 Bridgepoint Parkway
644 South Figueroa Street              Bridgepoint 1, Suite 220
Los Angeles, California 90017          Austin, Texas 78730
Tel: (213) 217-5000                    Tel: (512) 372-8100
Fax: (213) 217-5010                    Fax: (512) 372-8140

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), on Behalf of Itself and All Others Similarly Situated, as well as on Behalf of the General Public and Acting in the Public Interest,<br><br>　　　　　Plaintiff,<br><br>　　　　　vs.<br><br>Ameriquest Mortgage Company, et al.<br><br>　　　　　Defendants. | **CASE NO.   SACV 07-0794**<br><br>**OPPOSITION TO JOINT MOTION OF DEFENDANTS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Hearing Date:　June 2. 2008<br>Hearing Time:　10:00 a.m.<br>Place:　　　　Courtroom 10D<br>　　　　　　　Santa Ana Courthouse<br>Judge:　　　　Hon. Andrew J. Guilford |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES

I.      INTRODUCTION..................................................................1

II.     THE NAACP CLAIMS FOR DISCRIMINATORY LENDING
        PRACTICES ARE ADEQUATELY
        ALLEGED.......................................................................3

        A.      Rules Governing Consideration of Motions To Dismiss...............4

        B.      The NAACP Has Standing To Bring This Case........................5

                1.      The NAACP Has Associational Standing To
                        Bring This Action On Behalf of Its Members....................5

                        a.      The NAACP Alleges Injury To Its Members...............5

                        b.      The NAACP's Claims On Behalf Of Its
                                Members Do Not Require Member
                                Participation.......................................8

                2.      The NAACP Has Organizational Standing To Assert
                        Claims Under The FHA And The Civil Rights Act.............10

                        a.      The NAACP Has Sufficiently Alleged An
                                Injury To Establish Organizational
                                Standing Under The FHA................................11

                        b.      The "Zone Of Interest" Test Does Not
                                Defeat the NAACP's Standing Under
                                The Civil Rights Act....................................12

                        c.      NAACP Has Alleged That Defendants'
                                Conduct Caused Its Injuries...........................14

        C.      Disparate Impact Claims Are Available Under The FHA
                And ECOA....................................................................14

                1.      The Ninth Circuit – In Controlling Decisions That
                        Post-Date *Smith* (And Which Are Not Cited By
                        Defendants) – Has Repeatedly Held That Disparate
                        Impact Claims Are Available....................................14

                2.      Other Circuits Have Held – Post-*Smith*-That Disparate
                        Impact Claims Are Available Under The FHA And
                        ECOA........................................................................16

                3.      Legislative History Of The FHA And ECOA Confirm
                        The Availability Of Disparate Impact Claims.................17

i

TABLE

4.    The Text Of The Statutes Is Consistent With The Availability Of Disparate Impact Claims...........................20

5.    The Supreme Court's Interpretation Of The Rehabilitation Act And Title VI Undermines Defendants' Entire Theory Regarding Disparate Impact Claims.................................................................21

D.   The NAACP's Allegations Sufficiently State A Claim for Disparate Impact Discrimination Under Each Of The Causes of Action Alleged.............................................................23

1.    The NAACP's Allegations Satisfy The Pleading Standard For Disparate Impact Claims..........................25

2.    Even If The NAACP Was Required To Plead Disparate Impact With Particularity, The Allegations Are Adequate................................................................25

    a.    The NAACP Has Specifically Pled Practices At Issue..............................................25

    b.    The NAACP Has Alleged A Disparate Impact On African-Americans.....................................28

    c.    The NAACP Has Alleged A Causal Connection Between Defendants' Practices And The Disparate Impact..................................................30

3.    The SAC States Specific Allegations Against Each Defendant...................................................................31

E.   The NAACP Has Properly Alleged A Disparate Impact Claim Under Section 1982.................................................................33

F.   The NAACP Has Sufficiently Alleged Intentional Discrimination........................................................................33

G.   Plaintiff Can Assert Claims For Violation Of Both The FHA And The ECOA, Even If Plaintiff Cannot Later Recover Under Both...................................................................35

III.   CONCLUSION.....................................................................35

TABLE

1

## TABLE OF AUTHORITIES

2

### CASES

3 *Affordable Housing Devel'p Corp. v. City of Fresno*
    433 F.3d 1194 (9th Cir. 2006)................................................1, 4, 14
4

5 *Albermarle Paper Company v. Moody*
    U.S. Supreme Court, June 25, 1975.........................................19

6 *Alexander v. Choate*
    469 U.S. 287 (1985)...........................................................21, 23, 25
7

8 *Alexander v. Sandoval*
    532 U.S. 275 (2001)..............................................................22

9 *American Baptist Churches in the U.S.A. v. Meese*
    712 F. Supp. 756 (N.D. Cal. 1989)...................................9 10 12
10

11 *American Financial Services Ass'n v. City of Oakland*
    34 Cal.4th 1239 (2005)...........................................................27

12 *Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd.*
    2004 WL 28131121 (S.D.N.Y. 2004).....................................31
13

14 *Ashley Creek Phosphate Co. v. Norton*
    420 F.3d 934 (9th Cir. 2005)..................................................12

15 *American financial Services Ass'n v. City of Oakland*
    34 Cal.4th 1239 (2205)............................................................29
16

17 *Bano v. Union Carbide*
    361 F.3d 696 (2nd. Cir 2004)..................................................10

18 *Barron v. Reich*
    13 F.3d 1370 (9th Cir. 2006)...............................................4, 9 25
19

20 *Bayaa v. United Airlines, Inc.*
    249 F.Supp.2d 1198 (C.D. Cal. 2002).................................7, 9

21 *Bean v. Shapiro*
    WL 3411875, *3 (N.D. Cal. 2006).........................................3
22

23 *Beaulialice v. Federal Home Loan Mortgage Corp.*
    2007 WL 74466 (M.D. Fla. 2007)..........................................17

24 *Bell Atlantic Corporaiton v. Twombly*
    127 S.Ct. 1955 (2007)....................................................31, 32, 34
25

26 *Bennett v. Schmidt*
    153 F.3d 516 (7th Cir. 1998)...................................................25

27

iii

TABLE

*Bhandari v. First Nat'l Bank of Commerce*
    808 F.2d 1082 (5th Cir. 1987)……………………………………………..17

*Biddle v. Ruben*
    1995 WL 382961, *3 (N.D. Ill. 1995)………………………………………33

*Biomet, Inc. Health Ben. Plan v. Black,*
    51 F.Supp. 2d 942……………………………………………..……………….4

*Brown v. Coach Stores*
    163 F.3d 706 (2nd Cir. 1998)………………………………………25, 31

*Burrell v. State Farm Fire & Casualty Co.*
    2001 WL 797461 (S.D.N.Y. 2001)……………………………………..28

*Caputo-Conyers. V. Berkshire Realty Holdings*
    2005 WL 1862697, *4 (M.D. Fla. 2005)……………………………………28

*Cassettari v. County of Nevada*
    824 F.2d 735 (1987)………………………………………………45

*Cedillo v. International Ass'n of Bridge & Structural Iron Workers*
    603 F.2d 7 (7th Cir. 1979)……………………………...…………………………..29

*Charleston Housing Authority v., United Stattes Department of Agriculture*
    419 F.3d 729 (8th Cir. 2005)……………………………...…………………16

*Cherry v. Amoco Oil Co.*
    490 F. Supp. 1026 (D.C. Ga. 1980)……………………………………17

*Chevron, U.S.A., Inc. v. NRDC, Inc.*
    467 U.S. 837 (1984)……………………………………………….19

*City of Columbus v. Golden*
    546 U.S. 1032 (2005)…………………………………………….16

*Clarke v. Sec. Indus. Ass'n.*
    479 U.S. 388 (1987)……………………………………...…………………13, 15

*Day v. Apoliona*
    496 F.3d 1027 (9th Cir. 2007)……………………………………………16

*Dismuke v. Conner*
    Nos. 05-CV-1003 and 05-CV-1004
    007 WL 4463567 at * (W.D. Ark. 2007)……………………………………16

*Doe v. Stincer*
    175 F.3d 879 (11th Cir. 1999)…………………………………..……3, 6, 8

*Erickson v. Pardus*
    127 S. Ct. 2197 (2007)……………………………………………………..32

*F.G. Budnick v. Town of Carefree*
    518 F.3d 1109 (9th Cir. 2008)……………………………………1, 4, 15

iv

TABLE

*Foster v. MCI Telecommunications, Corp.*
  555 F. Supp. 330 (D.C. colo. 1983)…………….…………………….25

*Gamble v. City of Escondido*
  104 F. 3d 300 (9th Cir. 1997)……………………...……………….17

*Garcia v. County Wide Fin. Corp.*
  No. 07-1161……………………………………………………….15

*Garcia v. Johanns*
  444 F.3d 625 (D.C. Cir. 2006)……………………………………….17

*Gay v. Waiters' & Dairy Lunchmen's Union*
  694 F.2d 531 (9th Cir. 1982)……………………………………….33

*Gilligan v. Jamco Development Corp.*
  108 F.3d 246 (9th Cir. 1998)………………………………….15, 25

*Golden v. City of Columbus*
  404 F.3d 950 (6th Cir. 2005)…………….…………………….16

*Griggs v. Duke Power Company*
  401 U.S. 424 (1971)……………………………………………….19

*Guardian Assn v. Civil Serv. Comm'n of New York City*
  463 U.S. 582……………………………………………………….22

*Hallmark Developers, Inc. v. Fulton Cunty*
  446 F.3d 1276 (11th Cir. 2006)…………………...………………….16

*Harris v. Itzhaki*
  183 F.3d 1043 (9th Cir. 1999)………………………………...….15

*Havens Realty Corp. v. Coleman*
  445 U.S. 363……………………………...……………….11, 12, 21

*Henry v. Jones*
  507 F.3d 558 (7th Cir. 2007)……………………...……………….32

*HUD v. Mountain Side Mobile Estates*
  2 Fair Hous.-Fair Lend. (1993)……………………………....19

*Hunt v. Washington State Apple Advertising Comm'n.*
  432 U.S. 333 (1977)……………………………………….5, 8, 9, 11

*Iqbal v. Hasty*
  490 F.3d 143 (2d Cir., 2007)………...…………………….36, 32, 34

*In Re McKesson HBOC, Inc. ERISA Litigation*
  2002 WL 31431588 (N.D. Cal. (2002)……………………………….31

v

TABLE

*Jackson v. Birmingham Bd. Of Educ.*
    544 U.S. 167………………………………………………………………22

*Jackson v. Marion County*
    66 F.3d 151(7th Cir. 1995)……………………………………………5

*Jacksonville Branch, NAACP v. Duval County School Board*
    883 F.2d 945…………………………………………………..………7, 9

*Jones v. Alfred H. Mayer Co.*
    392 U.S. 409 (1968)……………………………………………………13

*Keith v. Volpe*
    858 F.2d 467 (9th Cir. 1988)…………………...……………………15

*Kelly v. Boeing Petroleum Services, Inc.*
    61 F.3d 350 (5th Cir. 1995)……………………………………………22

*Khan v. Sanofi-Synthelabo,m Inc.*
    2002 WL 3172058, *4 (S.D.N.Y. 2002)……………………………...29

*Kulkarni v. City Univ. of N.Y.*
    2002 WL 1315596, *1 (S.D.N.Y. 2001)……………………………28

*Llamas v. Butte Community College Dist*
    238 F.3d 1123 (9th Cir. 2001)………………………………………27

*Ladd v. Boeing Co.*
    463 F.Supp.2d 516 (E.D. Pa 2006)…………………………………27

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*
    507 U.S. 163 (1993)…………………………………………………45

*Lorillard v. Pons*
    434 U.S. 575 (1978)…………………………………………………18

*Lujan v. National Wildlife Federation*
    497. U.S. 871 (1990)…………………………………………………11

*McDonnell Douglas*, 33

*McGary v. City of Portland*
    386 F.3d 1259 (9th Cir. 2004)………………….……………………25

*McKesson HBOC, Inc. ERISA Litigation*
    2002 WL 31431588 (N.D. Cal. 2002)………………………………35

*Miller v. American Express Co.*
    688 F.2d 1235 (9th Cir. 1982)………………………………………15

*Miller v. Gammie*
    335 F.3d 889 (9th Cir. 2003)……………………...…………………16

vi

*Munoz v. Int'l Home Capital Corp*
2004 WL 3086907 *4 (N.D. Cal. 2004)………………………………34

*Nathe v. Weight Watchers Intern., Inc.*
2007 WL 2729015 *3 (S.D.N.Y. 2007)……………………………26

*Nat'l Fair Hous. Alliance v. Prudential Ins. Co. of Am.*
208 F.Supp.2d 46 (D.D.C. 2002)……………………………………18

*N.A.A.C.P. v. Acusport Corp.*
210 F.R.D. 446 (E.D.N.Y. 2002)……………………………………5

*N.A.A.C.P. v. Alabama ex rel. Patterson*
337 U.S. 449 (1958)………………………………………………5

*N.A.A.C.P. v. Button*
371 U.S. 415 (1963)………………………………………………6

*N.A.A.C.P. v. City of Kyle*
2006 WL 1751767 (2006)……………………………………………7

*Naacp v. Harris*
567 F.Supp. 637 (D. Mass. 1983)………………………………9, 11

*NAACP v. Town of New Haven*
892 F.Supp. 46 (D. Conn. 1995)……………………………………9

*Nat'l Fair Hous. Alliance v. Prudential Ins. Co. of Am*
208 F. Supp. 2d 46 (D.D.C. 2002)…………………………………20

*NYC C.L.A.S.H., Inc. v. City of New York*
315 F.Supp. 2d 461 (S.D.N.Y. 2004)………………………………7

*Ortega v. Merit Ins. Co.*
433 F. Supp. 135 (N.D.Ill. 1977)…………………………………33

*Osborne v. Bank of America, National Association*
234 F.Supp.2d 804 (M.D. Tenn. 2002)……………………………30

*Paige v. California*
291 F.3d 1141(9th Cir. 2002)………………………………………27

*Phiffer v. Proud Parrot Motor Hotel, Inc.*
648 F2d 548 (9th Cir. 19080)………………………………………33

*Plaff v. U.S. Dept. of Housing & Urban Development*
88 F.3d 739 (9th Cir. 1996)………………………………………15

*Powell v. Ridge*
189 F.3d 387 (3d Cir. 1999)………………………………………28

*Rahman v. Fed. Nat'l Mortgage Ass'n*
2003 WL 21940044, *2 (D.D.C. 2003)……………………………25

vii

TABLE

*Regents of the University of California v. Bakke*
   438 U.S. 265 (1978)................................................................22

*Reinhart v. Lincoln County*
   482 F.3d 1225 (10th Cir. 2007)................................................16

*Rent Stabilization*
   5 F.3d at 595...................................................................9, 10

*Ring v. First Interstate Mortg.Inc.*
   984 F.2d 924 (8th Cir. 1993)....................................................33

*Rodriguez v. Beechmont Bus. Serv., Inc.*
   173 F.Supp.2d 139 (S.D.N.Y. 2002)............................................28

*Rodriguez v. California Highway Patrol*
   89 F. Supp.2d 1131 (N.D. Cal. 2002)......................................3, 6, 9

*Rose* 902 f.2D AT 1424...............................................................27

*Sandoval* 532 U.S. 280...............................................................22

*Schaefer v. General Elec. Co.*
   2008 WL 649189, *D.Conn. 2008............................................32

*Smith v. City of Jackson,*
   544 U.S. 228 *(2005)*.....................................................17, 20

*Smith v. Pacific Properties and Development Corp.*
   358 F. 3d 1097.9

*Sparrow v. United Air Lines, Inc.*
   216 F.3d 1111 (D.C. Cir. 2000)............................................24, 27

*Stagi v. National Railroad Passenger Corp*
   407 F. Supp.2d 671 (E.D. Penn. 2005)........................................30

*Stout v. Potter*
   276 F.3d 1118 (9th Cir. 2002)..................................................27

*Swierkiewicz v. Sorema, N.A.*
   534 U.S. 506 (2002)...............................................4, 24, 32, 34

*Syverson v. International Business Machine Corp.*
   2007 WL 2904252, *6 (N.D. Cal. 2007).......................................28

*Tax Analysts And Advocates v. Blumenthal*
   566 F.2d 130 (D.C. Cir. 1977)..................................................13

*Trafficante v. Metropolitan Life Ins. Co.*
   409 U.S. 205 (1972)...........................................................5, 12

viii

TABLE

*2922 Sherman Avenue Tenants' Ass'n v. District of Columbia*
   444 F. 3d 673 (D.C. Cir. 2006)..................................................16

*Treasure Val. Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.*
   497 F.2d 203 (9th Cir. 1974)................................................25

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*
   517 U.S. 544 (1996).......................................................8

*United States v. Redwood City*
   640 F.2d 963 (1981)......................................................5

*Vance v. Chao*
   496 F.Supp.2d 186 (D.D.C. 2007)..........................................30

*Wards Cove Packing Co. v. Atonio*
   490 U.S. 642...................................................3, 29 ,31

*Ware v. Indymac Bank*
   F.S.B. 534 F. Supp.2d 835 (N.D. Ill. 2008)..........................34, 35

*Washington v. Davis*
   426 U.S. 229 (1976).....................................................22

*Zamudio v. HSBC North America Holdings, Inc.*
   WL 517138, at *2 (N.D. Ill. 2008)..........................3, 17, 26, 27

*Zuniga v. United Can Co.*
   812 F.2d 443 (9th Cir. 19897)...........................................33

## STATUTES AND OTHER AUTHORITIES

Federal Rule of Civil Procedure, Rule 8(a)...........................4, 32

15 USC Sections 1691...........................................20, 34

29 U.S.C. Section 623..........................................20, 21

42 U.S.C. Section 3604.......................................18, 22

42 U.S.C. Section 3602............................................20

42 U.S.C. Section 3601............................................22

15 U.S.C. Section 1691.....................................21, 23, 35

ix

TABLE

12.C.F.R. Section 202…………………………………………………..…………6.19

Federal Rule of Civil Procedure 8(a)(2)…………………………………34, 35, 36

Federal Rule of Civil Procedure 12(b)(6)………………………………………4

Civil Rights Act of 1866………………………………..………………………33, 34

(15 U.S.C. Section 169…………………………………………………………38

114 Cong. Rec. 2526 (1968)……………………………………………………18

H.R. Rep. No. 100-711, at 25 (1988)…………………………………………18

S. Rep. No. 94-589 at 2 (1976)………………………………..……………19

x

TABLE

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants' motion to dismiss is laden with vituperative attacks on this intentional discrimination and discriminatory impact action brought by the NAACP -- the nation's oldest and most preeminent civil rights organization that Defendants denigrate as a mere "political advocacy organization." Mot. at 1:3-4.  Defendants mischaracterize allegations set forth in the Second Amended Complaint ("SAC") in a manner that is antithetical to the fundamental rules that govern motions to dismiss.  Most disconcerting, Defendants fail to cite controlling opinions from the Ninth Circuit, which will be integral to this Court's analysis of the central issue of whether the NAACP has sufficiently alleged a case of disparate impact.

Defendants argue that "neither the text of the FHA, nor the text of ECOA, permits disparate impact." Mot. at 25:9-10.  However, approximately one month before Defendants filed this motion to dismiss, the Ninth Circuit issued an opinion in *F.G. Budnick v. Town of Carefree*, 518 F.3d 1109 (9th Cir. 2008), in which the Court ruled that disparate impact cases are actionable under the FHA.  Mysteriously, this controlling Ninth Circuit opinion and other contrary Ninth Circuit precedent (*i.e.*, *Affordable Housing Devel'p Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006)) are not included in Defendants' consolidated 31 page motion to dismiss.

Defendants argue that the NAACP is seeking monetary and other individualized relief (Mot. at pp. 12:16-23), when the SAC clearly does not request such relief.

Finally, Defendants argue that the NAACP has failed to identify with sufficient specificity the race neutral bank practices that have a disparate impact on African Americans.  Instead of addressing the actual facts alleged, Defendants castigate the NAACP by making nonsensical references to "press releases" and the time delay in serving the SAC.  Mot. at 2:17 – 3:26.  As Defendants are aware, the delay in serving the SAC made as a pre-condition by some Defendants for confidential settlement negotiations that apparently were only a ploy for delay and obfuscation.

According to Defendants, because the allegations of industry-wide race neutral practices are identical as to each defendant bank, they are insufficient to withstand a motion to dismiss.  Especially at the pleading stage, such arguments are of no moment given the presumptions

1

applicable to motions to dismiss.  Indeed, if the allegations are sufficient as to one defendant bank, they are necessarily sufficient as to all of the Defendants.

For example, with respect to Long Beach Mortgage Company ("Long Beach"), the NAACP alleges that the bank engages in the following race neutral policies and practices.  Long Beach provides greater financial compensation for mortgage brokers to steer consumers to subprime residential mortgage products in lieu of prime residential mortgage products.  At the same time, the bank actively marketing subprime residential mortgage loan products directly to consumers, without providing them with sufficient information on how to purchase prime residential mortgage products from Long Beach or one of its related entities.  Long Beach has the race neutral policy and practice of not providing meaningful review of loan applications to determine whether the applicant qualifies for a prime residential mortgage product offered by Long Beach or one of its affiliated entities (in other words, they blindly accept steering).  African Americans who qualify for prime residential mortgage loans are disparately impacted by these race neutral policies and practices because they are subjected to a significantly higher likelihood of receiving a subprime residential mortgage loan than similarly situated Long Beach Caucasian borrowers. (SAC, ¶77.)

The NAACP also alleges a separate set of Long Beach policies and practices that disparately affect African Americans who purchase Option Arm loans.  Long Beach has the race neutral policy and practice of evaluating an applicant's ability to pay Option Arm loans based upon the low, initial teaser rate, rather than the substantially higher rates that the consumers will not have an ability to pay – in derogation of the bank's obligations.  African Americans are disproportionately and adversely affected by these race neutral practices and procedures. *Id.* at ¶79.  It should be noted that this lawsuit seeks to prospectively change Long Beach's policies, so individualized proof from African Americans will not be required.

On its face, such allegations (and comparable ones made throughout the SAC) are more than sufficient to allege disparate impact.  However, Defendants contend that the NAACP must provide even greater detail at the pleading stage.  According to Defendants, the NAACP must state the terms of the financial compensation provided to mortgage brokers, and the actual marketing materials used.  Mot. at 19:14-27.  On its face, such arguments are contrary to the rules that

2

generally govern motions to dismiss, as well as being contrary to cases in which the courts have deemed less specific allegations to be sufficient for disparate impact causes of action. *See Zamudio v. HSBC North America Holdings, Inc.*, 2008 WL 517138, at *2 (N.D. Ill. 2008).

In addition to relying upon hyperbole in lieu of law, Defendants misuse authority they cite by attempting to extend cases dealing with summary judgment issues to a motion to dismiss. *E.g., Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 648, 651-653 (discussing, after bench trial, appropriate pool to compare). Again, such "litigation tactics" are entirely inappropriate.

Defendants' motion to dismiss should be denied in all respects.

## II.    THE NAACP'S CLAIMS FOR DISCRIMINATORY LENDING PRACTICES ARE ADEQUATELY ALLEGED.

At the outset, Defendants take the extreme position that the NAACP's case should be dismissed *with prejudice* (Mot. at p. 4:11), ostensibly because the original complaint has been subjected to pre-motion amendments. Such position is contrary to law. *Bean v. Shapiro*, 2006 WL 3411875, *3 (N.D.Cal. 2006) (granting leave to amend third amended complaint because it "is the first time the Court has evaluated" the plaintiff's claims).

Defendants further take the position that the NAACP lacks standing to pursue this action, either on behalf of its members or itself. Defendants' arguments are based upon misstatements of law and the allegations set forth in the SAC. According to Defendants, the NAACP lacks standing because it does not "ident[ify]" the NAACP's members who were injured. Mot. at 10:15-16. Strikingly, this argument ignores *Rodriguez v. California Highway Patrol*, 89 F.Supp.2d 1131, 1135-1136 (N.D.Cal. 2002), where a California District Court ruled "no legal authority requires that the names and contact information of individual members be alleged in the complaint." Tellingly, *Rodriguez* involved association standing asserted by the NAACP.

Defendants' motion is contrary to the generally accepted maxim that plaintiff organizations are *not* required to "name the members on whose behalf suit is brought." *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999). Defendants' other standing arguments are similarly meritless.

Defendants argue that the Fair Housing Act ("FHA") and Equal Credit Opportunity Act ("ECOA") do not support disparate impact claims. Strikingly, Defendants' team of attorneys

3

failed to locate and cite controlling Ninth Circuit precedent (decided **after** *Smith v. City of Jackson*) in which the Ninth Circuit ruled that FHA claims can be prosecuted under the disparate impact theory. *F.G. Budnick, supra*, 518 F.3d at 1118; *Affordable Housing, supra*, 433 F.3d at 1194 (9th Cir. 2006). Indeed, **every circuit** to consider the issue has reached a conclusion contrary to Defendants' position. Those decisions are consistent with the legislative history and text of the statutes. Defendants' argument in derogation of controlling precedent is without merit.

Accordingly, Defendants' motion to dismiss should be denied in all respects.

## A. Rules Governing Consideration of Motions to Dismiss

In evaluating a motion to dismiss, courts must accept the allegations of the complaint as true, and "construe them in the light most favorable to plaintiff." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002). Indeed, "[c]ourts view motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits." *Biomet, Inc. Health v. Black*, 51 F.Supp.2d 942, 945 (N.D.Ind.1999).

Under the "notice pleading" rule, a complaint is only required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rules of Civil Procedure, Rule 8(a). Particularity is *not* required except for claims of fraud or mistake. *Id.* at Rule 9(b). "[A] plaintiff in a suit in federal court need not plead facts; he can plead conclusions." *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995). "[F]ederal courts are not to interpolate a requirement of fact pleading into the federal rules." *Id.* It falls upon "summary judgment and control of discovery to weed out unmeritorious claims. . ." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-169 (1993).

When considering motions to dismiss, courts "presume[] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990). Matters extrinsic to the allegations of the complaint must be disregarded. *Cassettari v. County of Nevada*, 824 F.2d 735, 737 (9th Cir. 1987). "[I]t is only the extraordinary case in which dismissal is proper" under Rule 12(b)(6). *United States v. Redwood*

1  *City*, 640 F.2d 963, 966 (9th Cir. 1981.)

2     The United States Supreme Court has stated that the FHA must be given "generous
3  construction" to carry out "'a policy that Congress considered to be of the highest priority.'"
4  *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211-212 (1972). *Trafficante* emphasized
5  that private suits are "the primary method of obtaining compliance with the Act." *Id.* at 209, 211.

6  **B.     The NAACP Has Standing To Bring This Case.**

7     "[T]he courts have repeatedly upheld standing for the NAACP, both on behalf of itself and
8  of its members." *N.A.A.C.P. v. Acusport Corp.*, 210 F.R.D. 446, 451 (E.D.N.Y. 2002).

9     Indeed, because the NAACP is only seeking injunctive relief, participation of NAACP
10 members is not necessary.  With respect to its individual injury, the NAACP has sufficiently
11 alleged injury resulting from Defendants' conduct.

12
13  **1.     The NAACP Has Associational Standing To Bring This Action On Behalf
             Of Its Members.**

14    The Supreme Court has stated the requirements for associational standing, as follows: "(a)
15 its members would otherwise have standing to sue in their own right; (b) the interests it seeks to
16 protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief
17 requested requires the participation of individual members in the lawsuit." *Hunt v. Washington
18 State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  Defendants only challenge the
19 NAACP's allegations as to the first and third elements set forth in *Hunt*. Mot. at 10:3 – 14:26.

20  **a.     The NAACP Alleges Injury To Its Members.**

21    The NAACP has adequately pled injury to its members for associational standing purposes.
22 SAC, ¶¶13-14.  Defendants argue that "by not ***identifying*** a member with standing to sue each
23 defendant, plaintiff fails to meet *Hunt*'s first required element."  Mot. at 10:15-16 (emphasis
24 added).  Defendants' argument is without merit.

25    The Supreme Court long-ago rejected, in one of the earliest associational standing cases, the
26 "argument that the [the NAACP] lacks standing to assert here constitutional rights pertaining to
27 the members, who are not of course parties to the litigation." *NAACP v. Alabama ex rel. Patterson*
28 357 U.S. 449, 459 (1958).  In reaching this result, the Supreme Court held that the NAACP "and

5

its members are in every practical sense identical." *Id.*  In *permitting* associational standing, the Supreme Court *did not* require identification of any member of the NAACP.  Indeed, the issue addressed by the Supreme Court was "whether Alabama . . . can compel [the NAACP] *to reveal* . . . its Alabama members and agents." *Id.* at 451 (emphasis added).  The Supreme Court's acceptance of associational standing for the NAACP in that case, without requiring identification of any member, refutes Defendants' argument that such identification is a necessary allegation. Subsequent Supreme Court cases are in accord.  *See NAACP v. Button*, 371 U.S. 415, 428 (1963) (finding that the NAACP had standing both in its own right, and to assert the rights of its members, although none was named as plaintiff or identified).

Further, California district courts have previously rejected arguments -- identical to those made by Defendants in this case -- that the NAACP must identify the particular members it is suing on behalf of in order to plead associational standing:

> Defendants' primary argument is that the organizational plaintiffs' allegations are too general and that more specific allegations should be made *so that one may determine the actual identities of particular members of each organization* who claim to have been subjected to Defendants' alleged illegal practices.  However, *while information about claimed injuries caused to members of the NAACP and LULAC may be obtained in the course of discovery, no legal authority requires that the names and contact information of individual members be alleged in the complaint*.

*Rodriguez v. California Highway Patrol*, 89 F.Supp.2d 1131, 1135-36 (N.D.Cal. 2002) (emphasis added).

The Eleventh Circuit has also held that, in order to plead associational standing, a plaintiff organization is *not* required to "name the members on whose behalf suit is brought." *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999).  The *Doe* Court held:

> Under Article III's established doctrines of representational standing, *we have never held that a party suing as a representative must specifically name the individual on whose behalf the suit is brought*. . .

*Id.* at 884 (emphasis added).

Other district courts have also explicitly rejected the argument that an organization is required to identify members in order to plead associational standing:

6

The State Defendants argue that CLASH cannot meet the first requirement under *Hunt* because no individual aggrieved member of CLASH is identified. . . [T]he Court finds that CLASH . . . has met the first prong of *Hunt **without the need to identify any individual member***.

*NYC C.L.A.S.H., Inc. v. City of New York*, 315 F.Supp.2d 461, 468-69 (S.D.N.Y. 2004) (emphasis added); *see, also Jacksonville Branch, NAACP v. Duval County School Board*, 883 F.2d 945, 953, n.4 (same); *NAACP v. City of Kyle*, 2006 WL 1751767, *5 (W.D.Tex. 2006)(same).

The only case cited by Defendants for the proposition that the NAACP must plead the identity of its members for associational standing is *Bayaa v. United Airlines, Inc.*, 249 F.Supp.2d 1198 (C.D. Cal. 2002). Mot. at 10:15-12:2. Defendants' citation to *Bayaa* is meritless.

In *Bayaa*, the organizational plaintiff failed to make *any* allegation that its members were injured. *Id.* at 1204 ("ADC must at least allege that the injured persons are members of its organization"). Thus, the plaintiff alleged that "since September 11, the ADC has documented more than 60 incidents of racial discrimination against Arab Americans by domestic and foreign airlines. Eleven of those incidents involved passengers of Middle Eastern or South Asian descent who, like Mr. Bayaa, were removed from flights by United Airlines." *Bayaa*, *supra*, 249 F.Supp.2d at 1203. The court held this was inadequate because "***plaintiff ADC does not claim that the eleven individuals allegedly removed from UAL flights are its members***, and therefore ADC cannot seek to represent them." *Id.* at 1203-1204 (emphasis added). Moreover, *Bayaa* held that plaintiff's allegation that "'thousands of members and millions of constituents' have 'at various times been subjected to racially discriminatory practices similar to' plaintiff Bayaa's alleged experience on UAL" was also inadequate. *Id.* at 1204. *Bayaa* reached this conclusion because (i) it "decline[d] to acknowledge injuries to 'constituents' as satisfying the representational requirement of injury to 'members,'"; and (ii) "the complaint does not allege that 'the thousands of members and millions of constituents' were injured by UAL." *Id.*

Notably, and contrary to Defendants' argument, *Bayaa* also held that there was no requirement to identify injured members to plead associational standing.

[T]he Court *agrees* . . . that 'no legal authority requires that the names and contact information of individual members be alleged in the complaint.'

*Id.* (internal citations omitted, emphasis added). Thus, Defendants' citation to *Bayaa* for its

7

position that "by not *identifying* a member with standing to sue each defendant, plaintiff fails to meet *Hunt*'s first required element" (Motion, 10:15-16), has no basis.

Moreover, in this case, in contrast to *Bayaa*, the NAACP has alleged that its members "have been injured in fact by each Defendant" (*Id.* at ¶15), and "could directly pursue" this action. *Id.* at ¶14. This is adequate to allege the first element of associational standing. *Doe*, *supra*, 175 F.3d at 885 ("it is enough for the representational entity to allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right").

### b. The NAACP's Claims On Behalf Of Its Members Do Not Require Member Participation.

Defendants further argue that the NAACP cannot fulfill *Hunt*'s third element for associational standing. Defendants contend that "discrimination allegations require member participation." Mot. at 13:17-18. Defendants' position is without merit.

The Supreme Court has explained that "the third prong of the associational standing test is best seen as focusing [] on matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the constitution." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996). Thus, "once an association has satisfied *Hunt*'s first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." *Id.* at 556.

Contrary to Defendants' argument, the NAACP does not seek monetary damages on behalf of its members. The allegations that NAACP members have suffered economic injury and been damaged (Mot. at 12:19-20) are statements of fact, necessary to satisfy the first element of *Hunt*, *i.e.*, that NAACP "members would otherwise have standing to sue in their own right." *Hunt*, *supra*, 432 at 343. Those allegations do not set forth a claim for recovery of monetary damages.[1]

---

[1]    Defendants assert that the SAC contains language seeking "declaratory, monetary and injunctive *relief*." Mot. at 12:16-18, and SAC, ¶11 (italics added). This is similarly misleading because the monetary relief language refers to the general relief seeking costs, including reasonable attorney's fees. SAC, p.169, Prayer, ¶E. The request for costs and attorney's fees is a request for "monetary . . . relief," but it is not a request for damages to NAACP members.

8

Defendants also argue that purported claims for "restitution and disgorgement" defeat associational standing. Mot. at 12:24-27. Again, the SAC does not request restitution or disgorgement. Nowhere in the prayer for relief is such a remedy sought. Moreover, under the authority relied on by Defendants, it is premature to address this issue. *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1106.

Defendants' final argument that, as to the request for injunctive relief *only*, NAACP's "discrimination allegations require member participation" (Mot. at 13:17-18), is also meritless.

Numerous courts have found that the NAACP has associational standing in cases seeking injunctive relief based on allegations of discrimination. *See e.g. Rodriguez, supra*, 89 F.Supp.2d at 1135-36; *NAACP v. Town of New Haven*, 892 F.Supp. 46, 50 (D. Conn. 1995); *Jacksonville Branch, NAACP, supra*, 883 F.2d at 953, n.4; *NAACP v. Harris*, 567 F.Supp. 637, 639-40 (D.Mass. 1983). Defendants' blanket assertion that associational standing is not proper in discrimination cases has no merit.

Indeed, in *American Baptist Churches in the U.S.A. v. Meese*, 712 F.Supp 756, 765-766 (N.D.Cal. 1989), a case cited by Defendants, the court summarized Supreme Court precedent on this issue as follows, "*Warth* and *Hunt* correctly note that, where injunctive relief is sought, ***individualized proof is ordinarily unnecessary***." (emphasis added). Moreover, courts have held that "where only declaratory and injunctive relief are sought, [the NAACP] qualifies under" the third element of the *Hunt* test. *NAACP v. Harris*, 567 F.Supp. 637, 639-640 (D. Mass. 1983).

Defendants contend that "plaintiff cannot establish . . . its discrimination claims without the details of each member's credit transaction." Mot. at 14:22-24. This dubious assertion is extrinsic to, and conflicts with, the NAACP's allegations that: (i) this case arises out of "the same discriminatory treatment and policies and procedures that resulted in a disparate and discriminatory impact on the members of the subclasses" (SAC, ¶39); and (ii) "defendants have acted or refused to act on grounds generally applicable to the subclasses, making final injunctive relief proper with respect to the subclasses." *Id.* at ¶42. These allegations must be accepted as true. *Barron, supra*, 13 F.3d at 1374.

The cases cited by Defendants do not support their position. *Rent Stabilization Ass'n of*

9

*City of New York v. Dinkins*, 5 F.3d 591 (2nd Cir. 1993), is a case arising out of the Takings Clause, "as applied." *Id.* at 595. It is not a discrimination case. *Rent Stabilization* explicitly cited to Supreme Court precedent stating that "due to the 'essentially ad hoc, factual inquir[y]' involved in the takings analysis, we have found it particularly important in takings cases to adhere to our admonition that 'the constitutionality of statutes ought not be decided except in an actual factual setting.'" *Id.* at 596. In *Bano v. Union Carbide*, 361 F.3d 696 (2nd Cir. 2004), the Court addressed personal injury and property damage claims arising out toxic gas exposure at a chemical plant in India. *Id.* at 702-704. The court held that claims for "bodily harm and damage to real property" required individualized proof. *Id.* at 714-715. *Again, Bano did not involve allegations of discrimination*. Neither *Rent Stabilization* (a Takings Clause case) or *Bano* (a personal injury case) remotely support Defendants' claim that "discrimination allegations require member participation." Mot. at 13:17-18.

Defendants also cite to *American Baptist Churches, supra*. That case involved alleged discriminatory application of immigration laws in connection with plaintiffs' claim "that international treaties and customary international law confer upon Salvadoran and Guatemalan refugees the rights to temporary refuge in this country." *American Baptist Churches, supra*, 712 F.Supp. at 759. The court ruled that "plaintiffs must prove that these aliens entered this country to escape persecution, rather than for illegitimate purposes such as seeking economic opportunities." *Id.* Importantly, the denial of associational standing in *American Baptist Churches* had nothing to do with the fact that the case raised a discrimination claim.

## 2. The NAACP Has Organizational Standing To Assert Claims Under The FHA And The Civil Rights Act.[2]

The Supreme Court set forth the following three requirements to meet Article III standing:

> First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not 'conjectural or hypothetical.'' Second, there must be a causal connection between the injury and the conduct complained of – the

---

[2]    The NAACP does not claim organizational standing under the ECOA, only the FHA and the Civil Rights Act.

10

injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not … the result [of] the independent action of some third party not before the court.' Third, it must be 'likely', as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### a. The NAACP Has Sufficiently Alleged An Injury To Establish Organizational Standing Under The FHA

In its SAC, the NAACP set forth allegations that are sufficient to state an injury necessary for standing. In the seminal case on organizational standing, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, the Supreme Court analyzed whether a non-profit organization, which was founded "to make equal opportunity in housing a reality in the Richmond Metropolitan Area," had standing to sue on its own behalf for a violation of the FHA. *Id.* at 368. The Court looked to the allegations in the complaint to determine whether an injury was sufficiently alleged. The complaint stated "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices." *Id.* at 379. Based on this simple allegation, the Supreme Court concluded:

> If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities -- with the consequent drain on the organization's resources -- constitutes far more than simply a setback to the organization's abstract social interests.

*Id.*

A comparison of the allegations found sufficient in *Havens Realty* and the allegations in the SAC demonstrates that the NAACP has sufficiently alleged an injury for standing purposes. The NAACP "is the nation's oldest civil rights organization." SAC, ¶12. Its "mission includes ensuring economic equality and eliminating racial hatred and discrimination, including racial discrimination in housing." *Id.* In the SAC, the NAACP alleges the following injury:

> [T]he NAACP also has standing to sue in its own right because Defendants'

11

discriminatory mortgage lending policies and practices tend to frustrate the association's mission, reduce contributions and divert its resources, including through investigation, advocacy and counseling, and litigation costs.

*Id.* at ¶14.

The NAACP, like the plaintiff in *Havens Realty*, is an organization dedicated to racial equality. SAC, ¶12. The NAACP alleges, like the plaintiff in *Havens Realty*, frustration of its mission as a result of the reduction in contributions and the diversion of resources.[3] *Id.* at ¶13. Here, like in *Havens Realty*, the NAACP's allegations are adequate to alleged injury for organizational standing.

The NAACP is not attempting to "bootstrap its standing" by basing its injury on the costs associated with this action, as claimed by the defendants. Mot. at 7:3-4. The allegations clearly demonstrate this. The NAACP alleges that its resources are diverted to "investigation, advocacy, and counseling," which are independent of any litigation expenses. SAC, ¶14.

> **b.** **The "Zone Of Interest" Test Does Not Defeat the NAACP's Standing Under The Civil Rights Act.**

As to the Civil Rights cause of action (but not the FHA)[4], Defendants rely on the "zone of interest" to argue that the Court should exercise its discretion to deny standing to the NAACP. Mot. at 7:12-15. This position should be rejected.

The zone of interest "test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 399 (1987). However, "the test is not meant to be especially demanding; in particular, there need be

---

[3]    Defendants cite no authority for the proposition that the phrase "tends to" renders the alleged injury inadequate under *Havens Realty*.

[4]    The FHA is not subject to prudential limitations to standing, such as the "zone of interest" test, only the standing requirements of Article III. *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972) (Court agreed that the FHA showed "'a congressional intention to define standing as broadly as is permitted by Article III of the Constitution'").

1 | no indication of congressional purpose to benefit the would-be plaintiff." *Id.* at 399-400.[5]

2      Wide discretion is given to the court in its application of the zone of interest test. In *Tax*
3 | *Analysts and Advocates v. Blumenthal*, 566 F.2d 130 (D.C. Cir. 1977), the Court conducted an
4 | extensive review of the zone of interest test. The court noted that "[t]he 'zone test' is not a 'test'
5 | in the sense that it is capable of mechanical application to a set of facts with an easily discernable
6 | and certain result. Rather, it is…one of a '*series of inquiries*' designed to determine if a particular
7 | party has standing. As an inquiry, the standard involves a great deal of discretion in its
8 | application." *Id.* at 138, n. 38 (emphasis in original, internal citations omitted).

9      The Court further noted that "the zone test serves the purpose of allowing courts to define
10 | those instances when it believes the exercise of its power at the instruction of a particular party is
11 | not congruent with the mandate of the legislative branch in a particular area." *Id.* at 140. In *Clarke*
12 | *v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987), the Court ruled "the test denies a right of review if
13 | the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the
14 | statute that it cannot be reasonably assumed that Congress intended to permit the suit."

15      Sections 1981 and 1982 of the Civil Rights Act were enacted under, and in furtherance of,
16 | the Thirteenth Amendment. The Supreme Court long-ago gave a concise, yet compelling,
17 | summary of the purpose of the Thirteenth Amendment:

> Negro citizens, North and South, who saw in the Thirteenth Amendment a promise of freedom - freedom to 'go and come at pleasure' and to 'buy and sell when they please' - would be left with 'a mere paper guarantee' if Congress were powerless to assure that a dollar in the hands of a Negro will purchase the same thing as a dollar in the hands of a white man. At the very least, the freedom that Congress is empowered to secure under the Thirteenth Amendment includes the freedom to buy whatever a white man can buy, the right to live wherever a white man can live. If Congress cannot say that being a free man means at least this much, then the Thirteenth Amendment made a promise the Nation cannot keep.

25 | *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 443 (1968).

---

27 | [5]     The Ninth Circuit has also held that "[t]he zone of interests test is not intended to
28 | impose an onerous burden on the plaintiff and 'is not meant to be especially demanding.'"
*Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005).

The purpose behind sections 1981 and 1982 is to ensure that race is neither an advantage to some, nor a disadvantage to others, when entering into contracts or purchasing property. It is beyond dispute that the NAACP's interests are more than marginally related to and consistent with these statutory purposes. Thus, this suit is within the zone of interest the statutes protect.

### c. NAACP Has Alleged That Defendants' Conduct Caused Its Injuries.

Contrary to Defendants' assertions, the NAACP clearly alleges that the Defendants' conduct caused its injuries, namely frustration of the NAACP's mission, reduction of contributions and diversion of resources. SAC, ¶13.

### C.   Disparate Impact Claims Are Available Under The FHA And ECOA.

In *Smith v. City of Jackson*, 544 U.S. 228 (2005), the Supreme Court held that the ADEA *does apply* to disparate impact claims. Significantly, *Smith never mentioned, nor does it have anything to do with, the FHA or ECOA*. Defendants fail to cite, yet alone address, subsequent binding opinions from the Ninth Circuit that have permitted disparate impact claims under the FHA. In addition to the fact that their patently inappropriate failure to cite binding *contrary* authorities, Defendants' interpretation of *Smith* is entirely incorrect. The NAACP has properly alleged violations of the FHA and ECOA under the disparate impact theory.

### 1. The Ninth Circuit – In Controlling Decisions That Post-Date *Smith* (And Which Are Not Cited By Defendants) – Has Repeatedly Held That Disparate Impact Claims Are Available.

Although Defendants' entire argument that disparate impact claims are not available under the FHA and ECOA is premised on *Smith v. City of Jackson*, Defendants fail to cite controlling Ninth Circuit authority – decided after *Smith* – which happens to be contrary to their position. The Ninth Circuit, and numerous other circuit and district courts, post and pre-*Smith*, have unanimously held that disparate impact claims are proper under the FHA and ECOA.

On January 11, 2006 – after *Smith* was decided – the Ninth Circuit issued an opinion holding plaintiff "made a prima facie showing of [disparate-impact] discrimination" under the FHA. *Affordable Housing, supra*, 433 F.3d at 1194. On March 11, 2008 – nearly three years after *Smith* was decided -- the Ninth Circuit again ruled that the FHA supports disparate impact claims:

14

> ***To establish a prima facie case of disparate impact under the FHA***, 'a plaintiff must show at least that the defendant's action had a discriminatory effect.'. . .  A plaintiff need not establish discriminatory intent but the discriminatory impact must be proven; an inference of discriminatory impact is not sufficient.

*F.G. Budnick, supra*, 518 F.3d at 1118.[6]

Defendants improperly fail to cite this *controlling* authority.  Defendants' argument that *Smith v. City of Jackson* has invalidated Ninth Circuit authorities that permit disparate impact theories in FHA cases, without advising this Court that the Ninth Circuit has issued subsequent opinions contrary to their position, is disconcerting, at best.

The post-*Smith* Ninth Circuit decisions confirming the existence of disparate impact claims under the FHA are consistent with Ninth Circuit opinions decided before *Smith*.  Thus, in *Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988), the Ninth Circuit held that a FHA violation can occur when "the defendant's actions had a discriminatory effect. . . The plaintiff need make no showing whatsoever that the action resulting in racial discrimination . . . was racially motivated."' *Id*. at 482.  Moreover, in *Plaff v. U.S. Dept. of Housing & Urban Development*, 88 F.3d 739 (9th Cir. 1996), the Ninth Circuit specified that "no . . . finding of intent is required to establish a prima facie case of disparate impact under the FHA." *Id*. at 745-46.  Additional Ninth Circuit opinions have held the same. *See Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 250 (9th Cir. 1998); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

The Ninth Circuit has also issued *controlling* authority establishing that the ECOA supports a disparate impact claim.  In *Miller v. American Express Co.*, 688 F.2d 1235 (9th Cir. 1982), the Ninth Circuit recognized that ECOA prohibits credit providers from actions that have a disparate impact on protected classes of individuals. *See id*. at 1239-40.  *Miller* noted that Congress clearly endorsed disparate impact analysis in enacting ECOA, and the court further explained that "not requiring proof of discriminatory intent is especially appropriate in analysis of ECOA violations

---

[6]    Federal courts from this district also agree that disparate impact claims remain viable under the FHA, post-*Smith*. *See Garcia v. Countrywide Fin. Corp.*, No. 07-1161-VAP (JCRx), slip op. at 7-11 (C.D. Cal. Jan. 15, 2008) ("this Court declines to hold that *Smith* overturned Ninth Circuit precedent recognizing disparate impact claims under the FHA and ECOA").

because '*discrimination in credit transactions is more likely to be of the unintentional, rather than the intentional, variety.*'" *Id*. at 1239-40 (emphasis added).

There is no basis for this Court to reject the Ninth Circuit's holding on these questions. The Ninth Circuit has stressed the very limited circumstances when a district court can disregard prior circuit precedent based on intervening Supreme Court precedent: Only when that intervening case "undercut[s] the theory or reasoning underlying the prior circuit court precedent in such a way that the cases are *clearly irreconcilable*." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see also Day v. Apoliona*, 496 F.3d 1027, 1035 (9th Cir. 2007).

The Supreme Court's decision in *Smith v. City of Jackson*, 544 U.S. 228 (2005), does not come close to meeting this demanding standard.

### 2. Other Circuits Have Held – Post-*Smith* – That Disparate Impact Claims Are Available Under The FHA And ECOA.

The Ninth Circuit is not alone in its analysis. Court after court has unanimously held – post-*Smith* – that disparate impact claims are available under the FHA and ECOA. The opinions of the circuit courts as to the FHA have been described as follows:

> [E]*very one of the eleven circuits to have considered the issue* has held that the FHA similarly prohibits not only intentional housing discrimination, but also housing actions having a disparate impact.

*2922 Sherman Avenue Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 679 (D.C. Cir. 2006); *see also Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007); *Charleston Housing Authority v. United States Department of Agriculture*, 419 F.3d 729, 740-41 (8th Cir. 2005); *Hallmark Developers, Inc. v. Fulton County*, 466 F.3d 1276, 1286 (11th Cir. 2006).

As to the ECOA, the Sixth Circuit held as follows:

> Neither the Supreme Court nor this Court have previously decided whether disparate impact claims are permissible under ECOA. However, it appears that they are.

16

1  *Golden v. City of Columbus*, 404 F.3d 950, 963, n.11 (6th Cir. 2005).[7]

2       District courts, after the *Smith* ruling, have agreed with the Sixth Circuit that the ECOA

3  supports disparate impact claims, post-*Smith*. *Dismuke v. Conner*, Nos. 05-CV-1003 and 05-CV-

4  1004, 2007 WL 4463567, at *4 (W.D. Ark. 2007) ("[a] credit applicant may prove unlawful

5  discrimination under ECOA using . . . disparate impact analysis").[8]

6       Indeed, case law has explicitly rejected the ***identical*** argument, based on *Smith*, advanced

7  by Defendants in this case.

8           ***[I]t is well established that a disparate-impact claim is available under***
           ***both ECOA and FHA***. . .  Defendants' argument that *Smith v. City of*

9           *Jackson* . . . bars such a claim is unpersuasive. . .  The effect of *Smith* is to

10          narrow the scope of a disparate-impact claim under the ADEA compared to
           the scope of such claims under Title VII.  Although the identical language

11          found in the ADEA and Title VII was a basis for comparison in *Smith*, the
           *Smith* decision does not reach so far as to prohibit disparate-impact claims

12          under other statutes that do not contain this same language; nor does it set

13          forth a new test for determining whether a statute supports disparate-impact

14          claims.

15  *Zamudio v. HSBC North America Holdings, Inc.*, 2008 WL 517138, at *2 (N.D. Ill. 2008)

16  (emphasis added); *see also Beaulialice v. Federal Home Loan Mortgage Corp.*, 2007 WL

17  744646, at *4 (M.D. Fla. 2007) (same).

18       Defendants' reliance on *Garcia v. Johanns*, 444 F.3d 625 (D.C. Cir. 2006), for the

19  proposition that "neither the FHA nor the ECOA permits disparate impact" (Motion at 28:4-9), is

20  misplaced.  The Court in *Garcia* stated that it "express[es] no opinion about whether a disparate

21  impact claim can be pursued under the ECOA." *Garcia, supra,* at 633 n.9.  The Court simply

22  noted that the "otherwise adversely affect" language was not found in the ECOA.  *Id.*  The Court

23  did not say that this language was necessary for a disparate impact claim, or that no other

24  language could give rise to a disparate impact claim.  *Garcia* did not address the FHA.

---

25

26  [7]    The United States Supreme Court ***denied*** a petition for writ of certiorari as to this
    decision. *City of Columbus v. Golden*, 546 U.S. 1032 (2005).

27  [8]    Prior to *Smith*, circuit and district courts also agreed that disparate impact claims were

28  available under the ECOA. *Bhandari v. First Nat'l Bank of Commerce*, 808 F.2d 1082, 1101
    (5th Cir. 1987); *Cherry v. Amoco Oil Co.*, 490 F.Supp. 1026, 1030 (D.C.Ga. 1980).

### 3.   Legislative History Of The FHA And ECOA Confirm The Availability Of Disparate Impact Claims.

The Legislative history of the FHA is entirely consistent with the Ninth Circuit's ruling that disparate impact claims can be prosecuted under the FHA.  Congressional proponents of the FHA emphasized that the facially neutral practices of private and public actors were a principal cause of residential segregation, which the Act aimed to eliminate.  Senator Brooke stated that African-Americans could not move to better neighborhoods because there were "surrounded by a pattern of discrimination based on individual prejudices . . . institutionalized by business and industry . . . practices." 114 Cong. Rec. 2526 (1968).  Senator Mondale stated that "Congress should now pass a fair housing act to undo the effects" of past discriminatory governmental actions.  *Id.* at 2669.[9]

Furthermore, when Congress passed the Fair Housing Amendments Act of 1988 ("FHAA"), Congress used the same language the FHA had already applied to race, color, religion, sex, and national origin to add new prohibitions because of familial status or handicap. *Compare* 42 U.S.C. § 3604(a), (b) *with id.* § 3604(f)(1), (2).  Prior to the enactment of the FHAA, all circuit courts to address the issue concluded that the FHA included a disparate impact cause of action.  The legislative history of the FHAA shows that Congress agreed with the courts.

The House of Representatives, indicating its intention that disparate impact analysis apply to the newly protected class of the FHAA, stated:

> The Committee understands that housing discrimination against handicapped persons is not limited to blatant, intentional acts of discrimination.  Acts that have the effect of causing discrimination can be just as devastating as intentional discrimination.  A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access to a unit and by too narrow doorways as by a posted sign saying 'No Handicapped Allowed.'

H.R. Rep. No. 100-711, at 25 (1988).

Significantly, this Legislative history is extremely pertinent because the presumption that

---

[9]   While this statement is aimed at public actors, there is no indication in the Act's text or history that Congress intended to treat facially neutral private and public acts differently. *See Nat'l Fair Hous. Alliance v. Prudential Ins. Co. of Am.*, 208 F.Supp.2d 46, 59, n.7 (D.D.C. 2002).

18

Congress "adopt[s prior judicial] interpretation when it re-enacts a statute without change" is especially strong with respect to the disparate impact decisions that preceded the FHAA. *Lorillard v. Pons*, 434 U.S. 575, 580 (1978).

Congressional intent also supports a finding that the ECOA gives rise to disparate impact claims. Congress passed the ECOA in 1974 to prohibit credit discrimination based on sex or marital status. S. Rep. No. 94-589 at 2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 403, 404. The ECOA was later amended in 1976 to prohibit discrimination based on age, race, color, religion, national origin, receipt of public assistance benefits, and exercise of rights under the Consumer Credit Protection Act. *Id.* The Senate report on the 1976 Amendments expressly provided that courts could look to the *effects* of the creditors' practices, irrespective of their motivation.

> In determining the existence of discrimination on these grounds, as well as on the other grounds discussed below, ***courts or agencies are free to look at the effects of a creditor's practices*** as well as the creditor's motives or conduct in individual transactions. Thus judicial constructions of anti-discrimination legislation in the employment field, in cases such as *Griggs v. Duke Power Company*, 401 U.S. 424 (1971), and *Albemarle Paper Company v. Moody* (U.S. Supreme Court, June 25, 1975), are intended to serve as guides in the application of this Act, especially with respect to the allocations of burdens of proof.

S. REP. 94-589, 4-5, 1976 U.S.C.C.A.N. 403, 406 (emphasis added).

With respect to the FHA, the Secretary of HUD has expressly endorsed the application of disparate impact to FHA violations. *See HUD v. Mountain Side Mobile Estates*, 2 Fair Hous.-Fair Lend. (P-H) ¶25,035, 1993 WL 307069, *5 (HUD Sec'y 1993).[10]

As to the ECOA, the Board of Governors of the Federal Reserve System ("Board") was given the power to promulgate regulations to carry out its purposes. 15 U.S.C. § 1691b(a)(1). Pursuant to this power, the Board promulgated Regulation B, 12 C.F.R. Part 202. Specifically, 12 C.F.R. § 202.6 states that the effects test from *Griggs* is to be applicable to creditor's

---

[10]    While the administrative decision in *HUD v. Mountain Side* was overturned by the Tenth Circuit, the Court expressly endorsed the Secretary's view that the FHA includes a disparate impact cause of action. *Mountain Side Mobile Estates Partnership v. Secretary of Housing and Urban Development*, 56 F.3d 1243, 1250 (10th Cir. 1995).

19

determination of creditworthiness.  Under Supreme Court precedent, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984).

The legislative history of the statutes, in combination with interpretations by the administrative agencies vested with administering the statutes, clearly establish an intent that the FHA and ECOA support disparate impact claims.

### 4.    The Text Of The Statutes Is Consistent With The Availability Of Disparate Impact Claims.

Defendants' attempt to expand *Smith* in derogation of binding Ninth Circuit opinions is further undermined by key textual differences between the FHA and ECOA, and the ADEA provisions considered in *Smith*.

The Supreme Court explained in *Smith* that an explicit focus on a *particular individual* is the reason why one part of the ADEA -- 29 U.S.C. § 623(a)(1) -- is inconsistent with disparate impact liability.  *Smith, supra*, 544 U.S. at 236, n.6.  The key words in the ADEA emphasized by the *Smith* Court – "*any individual*" and "*because of such individual's*" (*id.* (emphasis in original)) – are **not** found in the FHA or ECOA.  Indeed, as to the portion of the ADEA which did not encompass disparate impact, *Smith* explicitly stated that "[t]he focus of the paragraph is on ***the employer's actions with respect to targeted individuals***."  *Id.* (emphasis added).

In contrast, the FHA uses "any person" (42 U.S.C. § 3605[a]) instead of the ADEA's "any individual," and defines "person" to include "one or more individuals." 42 U.S.C. § 3602(d).  Similarly, the FHA has no parallel to the ADEA's provision tying discrimination to "such individual's" protected characteristics.  The FHA's use of the plural is more akin to the section of the ADEA that *Smith* found does apply to disparate impact claims, 29 U.S.C. § 623(a)(2), because that section of the ADEA also uses the plural term "employees."

Moreover, the FHA provides that "[i]t is the policy of the United States to provide, *within constitutional limitations*, for fair housing throughout the United States." 42 U.S.C. § 3601.  This requires that, if there are two constitutional constructions of the FHA, the one that applies to *more* conduct is the correct construction.  This is precisely why the Supreme Court has interpreted the

FHA to eliminate the usual prudential requirements for standing. *See Havens Realty Corp., supra,* 455 U.S. at 372. There is no parallel to this provision in the ADEA.

Like the FHA, the ECOA does *not* focus its language on "actions with respect to a targeted individual." *Smith, supra,* 544 U.S. at 236, n.6. Rather, the ECOA makes it "unlawful for any creditor to discriminate . . . on the basis of race." 15 U.S.C. §1691(a)(1). As delineated above, this is unlike §623(a)(1) of the ADEA, which focus on "such individual's age." 29 U.S.C. §623(a)(1). Because the ECOA is not limited to "such individual's," but instead unqualifiedly prohibits discrimination "on the basis of race," it encompasses disparate impact claims under *Smith.*

### 5.    The Supreme Court's Interpretation Of The Rehabilitation Act And Title VI Undermines Defendants' Entire Theory Regarding Disparate Impact Claims.

Defendants' argument regarding disparate impact claims omits Supreme Court precedent interpreting the Rehabilitation Act, 29 U.S.C. § 794 (formerly § 504), prohibiting disability discrimination. The Supreme Court's interpretation of this statute completely undercuts Defendants' position. Notably, the language of the Rehabilitation Act *was not* included in the chart of statutes which Defendants' contend "are dispositive" of the issue. Mot. at 27:1-21.

Defendants' position is that "the omission of 'effects' language from the FHA and ECOA [is] intentional and conclusive that neither the FHA and ECOA permits disparate impact claims." Mot. at 28:6-9. However, the Rehabilitation Act also does not include the "effects" language:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . .

29 U.S.C. §794.

In *Alexander v. Choate,* 469 U.S. 287, 290 (1985), a case not cited by Defendants, the Supreme Court refused to interpret the Rehabilitation Act as prohibiting disparate impact claims. *Id.* at 294-295, 298-299. After examining the statute's legislative history, the Court ruled that "[i]n refusing expressly to limit § 504 to intentional discrimination, Congress could be thought to have *approved* a disparate-impact standard for § 504." *Id.* at 294, n.11 (italics added).

> [M]uch of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act

21

construed to proscribe only conduct fueled by discriminatory intent. . . These statements would ring hollow if the resulting legislation could not rectify the harms resulting from action that discriminated by effect as well as design.

*Id.* at 296-297.

*Alexander* ruled that "[a]ll the Courts of Appeal that have addressed the issue have agreed that, at least under some circumstances, § 504 reaches disparate impact discrimination . . . At least 24 federal agencies have reached the same conclusion." *Id.* at 297n.17. Subsequent courts have ruled that "[i]n *Alexander* . . . the Court expressly rejected the notion that a plaintiff is required to show discriminatory intent to establish a prima facie case of disparate impact under [the Rehabilitation Act]." *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 365 (5th Cir. 1995).

The Supreme Court's holding in *Alexander v. Choate*, with respect to the Rehabilitation Act, demonstrates the inaccuracy of Defendants' assertion that "when the statutory text lacks a provision . . . based on 'effects' of actions, the Court has held the statute does not permit disparate impact claims." Mot. at 28:17-19.

Indeed, the *only* discrimination statute the Supreme Court has held does *not* support a disparate impact claim is Title VI. *See Guardian Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582, 610-611; and *Alexander v. Sandoval*, 532 U.S. 275, 292-293 (2001). Title VI is unique because it codified and created a private right of action for violations of the equal protection clause and the Fifth Amendment. *Regents of the University of California v. Bakke*, 438 U.S. 265, 287 (1978). Importantly, Supreme Court precedent has held that *only* intentional discrimination violates the constitution. *Washington v. Davis*, 426 U.S. 229, 242 (1976). This compelled the Supreme Court's interpretation of Title VI. *Guardians, supra*, 463 U.S. at 611 (the conclusion "'that Title VI's definition of racial discrimination is absolutely coextensive with the Constitution's . . . necessarily requires rejection of the prior decision . . . that discriminatory impact suffices to establish liability under Title VI'") (J. Powell, concurring); and *Sandoval, supra*, 532 U.S. at 280-281 ("essential to the Court's holding . . . was the determination that § 601 [of Title VI] 'proscribe[s] only racial classifications that would violate the Equal Protection

22

Clause or the Fifth Amendment").[11]

The Rehabilitation Act, and the FHA and ECOA, unlike Title VI, are not "coextensive with the constitution." Thus, the Supreme Court in *Alexander v. Choate* refused to interpret the Rehabilitation Act like Title VI, *i.e.*, as applying only to intentional discrimination. See *Alexander*, *supra*, 469 U.S. at 294, n.11 (discussing "considerations [that] counsel hesitation before reading Title VI and § 504 *in pari materia* with respect to the effect/intent issue"). The Supreme Court reached this result although the Rehabilitation Act has the *same* anti-discrimination language as Title VI, except applicable to disability discrimination. *See id.* at n.7.

The Supreme Court's analysis of the Rehabilitation Act and Title VI demonstrates that Defendants' contorted textual arguments that disparate impact claims are unavailable under the FHA and ECOA are without merit.

**D.    The NAACP's Allegations Sufficiently State A Claim For Disparate Impact Discrimination Under Each Of The Causes Of Action Alleged.**

The SAC more than adequately alleges a disparate impact claim, particularly given the low federal standard for alleging discrimination claims. Defendants, under the guise of attacking the NAACP's allegations, attempt to change the standards for consideration of this motion to dismiss beyond those applicable to motions for summary judgment. This is unfair and improper, especially prior to the time the NAACP is given the opportunity to conduct discovery. While the NAACP will be called upon at trial to proffer more than is now required at the pleading stage, Defendants attempt to place the "cart before the horse" and require the NAACP to proffer evidence that it will more fully obtain in discovery after the Court denies the motion to dismiss.

At the outset, Defendants attempt to place their own spin on the facts alleged in the SAC, by implying that the NAACP's specific allegations of race neutral practices by the individual banks lose their "specific" character because the NAACP alleges that such practices were engaged in by each Defendant bank. Mot. at 3:12-16. At the pleading stage, such arguments should be of no

---

[11]    Defendants also cite to *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178, as purportedly holding that Title IX "does not permit disparate impact claims." Mot. at 28:16-20. In fact, *Jackson* addressed retaliation claims, not disparate impact claims. *Jackson*, *supra*, at 178.

23

moment given the presumptions applicable to motions to dismiss.  Indeed, if the allegations are sufficient as to one defendant bank, they are necessarily sufficient as to all of the Defendants.

For example, with respect to defendant Long Beach Mortgage, the NAACP alleges that it has the following specific race neutral policies and practices.  Long Beach provides greater financial compensation to mortgage brokers to steer consumers to subprime residential mortgage products in lieu of prime residential mortgage products.  SAC, ¶272(b).  At the same time, it actively markets subprime residential mortgage loan products directly to consumers, without providing them with sufficient information on how to purchase prime residential mortgage products from Long Beach or one of its related entities.  *Id.* at ¶272(a).  Significantly, Long Beach has the race neutral policy and practice of not providing meaningful review of loan applications to determine whether the applicant qualifies for a prime residential mortgage product offered by Long Beach or one of its affiliated entities (in other words, it blindly accepts steering).  *Id.* at ¶272(c).  These race neutral policies and practices have a disparate impact on African Americans, because African Americans who qualify for prime residential mortgages have a significantly higher likelihood of receiving a subprime residential mortgage loan from Long Beach than similarly situated Caucasian borrowers.  *Id.* at ¶273.

The NAACP also alleges a separate set of Long Beach policies and practices that disparately affect African Americans who purchase Option Arm loans.  *Id.* at ¶274.  Long Beach has the race neutral policy and practice of evaluating an applicant's ability to pay Option Arm loans based upon the low, initial teaser rate, rather than the substantially higher rates that the consumers will not have an ability to pay – in derogation of the bank's obligations.  *Id.* at ¶¶263, 274(b).  African Americans are disproportionately and adversely affected by these race neutral practices and procedures.  *Id.* at ¶275.

On its face, these allegations sufficiently allege a disparate impact claim.  They also provide Long Beach with sufficient notice of the claims that are being asserted against it.

As to each Defendant, the motion to dismiss should be denied because the SAC contains sufficiently allegations of race neutral policies that cause a disparate impact to African Americans.

24

### 1. The NAACP's Allegations Satisfy The Pleading Standard For Disparate Impact Claims.

The Supreme Court has held that, in discrimination cases, "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz*, *supra*, 534 U.S. at 511. Moreover, in disparate impact claims, "[c]omplaints 'need not plead law or match facts to every element of a legal theory.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000). At the pleading stage, a plaintiff is only required to allege the elements of a disparate impact claim, not prove a *prima facie* case. *Gilligan*, supra, 108 F.3d at 250.

"[P]leading requirements in discrimination cases are very lenient, even *de minimis*." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2nd Cir. 1998) (italics in original). "To survive a motion to dismiss, all that the plaintiff must do is plead that a facially neutral practice's adverse effects fall disproportionately on a group protected by Title VI." *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999) (superceded on other grounds). Minimal descriptions of discrimination, such "'I was turned down for a job because of my race'" or "'I was turned down for a loan because of my race'" are sufficient to survive a motion to dismiss. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); and *Rahmaan v. Fed. Nat'l Mortgage Ass'n*, 2003 WL 21940044, *2 (D.D.C. 2003). This "threshold for pleading discrimination claims" applies to FHA claims. *McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004).

### 2. Even If The NAACP Was Required To Plead Disparate Impact With Particularity, The Allegations Are Adequate.

#### a. The NAACP Has Specifically Pled The Practices At Issue.

In arguing that the NAACP has failed to adequately allege specific, facially-neutral policies, Defendants assert that the NAACP's allegations "inaccurately" describe their policies. Mot. at 18:27. Defendants' challenge to the "accuracy" of plaintiff's allegations is improper on a motion to dismiss. *Barron*, *supra*, 13 F.3d at 1374 (allegations are accepted as true).

Defendants also assert that, as to the practices alleged involving their individual marketing of subprime loans, the allegations are "incomprehensible, as it is not at all clear what the NAACP means by 'marketing.'" Mot. at 19:15-16. This is meritless. Marketing is a well-understood term used frequently in legal practice. *Treasure Val. Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.*,

25

497 F.2d 203, 215 (9th Cir. 1974). Moreover, cases have *approved* disparate impact claims involving allegations of a facially neutral *marketing* policy.

> Plaintiff established a *prima facie* case of discrimination under a disparate impact theory. As MCI changed its **marketing policy**, it also changed its sales staff. The changes occurred over a period of time, subjective criteria were used by the defendant, and the ultimate result was a sales force comprised solely of anglos.

*Foster v. MCI Telecommunications, Corp.*, 555 F.Supp. 330, 335 (D.C.Colo. 1983)(emphasis added).[12]

In *Zamudio, supra*, 2008 WL 517138, at *2, in an action brought against HSBC, the court noted the far more generalized allegation regarding bank policies than alleged in the SAC:

> Zamudio asserts that racially discriminatory assumptions are embedded in the statistical formulas used to analyze credit information and ultimately form underwriting decisions.

The court ruled that such allegations are "sufficient to meet the basic pleading requirements under *Twombly*." *Id.* Similar to the situation in this action, "***The only way for Zamudio to ascertain a more detailed picture of Defendants' use of credit-related variables would be through discovery***." *Id.* (emphasis added).

Here, the NAACP's allegations are substantially more detailed than in *Zamudio*.

Defendants' arguments regarding the pools that should be compared, the statistics that should be used, and the specificity of the practices engaged in are evidentiary issues that should be addressed on summary judgment or trial, *after* an opportunity to conduct discovery. *Cedillo v. International Ass'n of Bridge & Structural Iron Workers*, 603 F.2d 7, 12 (7th Cir. 1979).

With respect to the NAACP's specific allegation that the banks have a practice of "providing financial incentives for mortgage brokers to steer consumers to subprime residential mortgage products in lieu of prime residential mortgage products" (SAC, ¶76(b) and *passim*), Defendants contend this is nothing more than "a generalized policy insufficient to state a

---

[12]   *See also Nathe v. Weight Watchers Intern., Inc.*, 2007 WL 2729015, *3 (S.D.N.Y.,2007) (denying a motion to dismiss where "the bulk of Plaintiff's allegations relating to the circumstances of her termination concern the allegedly disparate impact of Defendant's **marketing** and compensation **policies**") (emphasis added).

disparate impact claim." Mot. at 19:26-27. This is not a generalized policy – it is the policy and practice – more than sufficiently pled for purposes of a motion to dismiss.

As to the two other policies pled by the NAACP regarding Defendants' failure to review or evaluate loan applications (SAC, ¶76(c) and 78(b)), Defendants again assert – without any explanation or authority – that the allegations are "too vague." Mot. at 20:4-5. But, once again, the allegations are sufficiently specific. Defendants' naked assertion of vagueness is meritless. Moreover, Defendants' argument that "[t]he alleged failure of Defendants to evaluate an applicant's ability to pay . . . [is not] a 'plausible' basis for a claim to proceed" (Mot. at 20:5-8), has no merit. Defendants have a non-delegable duty to evaluate the borrowers ability to pay the entire loan. *See e.g., American Financial Services Ass'n v. City of Oakland*, 34 Cal.4th 1239, 1246 (2005) ("a person who originates covered loans shall not . . . 'make or arrange a covered loan unless . . . the person reasonably believes the consumer ... will be able to make the scheduled payments to repay the obligation based" on specified factors).

In addition to *Zamudio*, other courts have approved disparate impact allegations of policies and practices that are less specific than those alleged by the NAACP in the SAC. *See e.g., Rose, supra*, 902 F.2d at 1424-1425 ("Wells Fargo's policy of committing employment decisions to the subjective discretion of its managers is a specific employment practice subject to a disparate impact analysis"); *Sparrow, supra*, 216 F.3d at 1115 (allowing allegation of "disparate and discriminatory application by the Defendants of the personnel, compensation, and termination policies"); and *Ladd v. Boeing Co.*, 463 F.Supp.2d 516, 522 (E.D. Pa. 2006) (approving allegation of disparate impact based on defendants' "practice and policy of delegating Ladd's valid complaints . . . to the subjective decision-making and caprice of Ladd's superiors").

Many of the cases relied on by Defendants in arguing that the NAACP's allegations are inadequate are summary judgment cases, which do not address the pleading standard. *See Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002); *Paige v. California*, 291 F.3d 1141, 1143 (9th Cir. 2002); and *Llamas v. Butte Community College Dist.*, 238 F.3d 1123, 1127 (9th Cir. 2001). Moreover, they are otherwise distinguishable. Thus, the plaintiffs in *Stout* failed to identify any policy or practice, but instead cited to defendants' "overall decision making process" with respect

27

to promoting employees. *Stout, supra,* 276 F.3d at 1124. *Paige* involved a "debate over the use of external versus internal pool" to compare with the pool of employees who received promotion. *Paige, supra,* 291 F.3d at 1146. In *Llamas,* summary judgment was granted because the plaintiff "failed to identify the 'practice or policy' that allegedly caused any disparate impact." *Llamas, supra,* at 1127. *Stout, Paige* and *Llamas* are factually and procedurally distinct, and have very little relevance to the *pleading* issue raised by Defendants' motion.

The other cases cited by Defendants similarly contain allegations that are markedly less specific than those alleged in the SAC. *See Syverson v. International Business Machine Corp.,* 2007 WL 2904252, (N.D.Cal. 2007) (the plaintiffs "fail[ed] to identify the specific employment practices relevant to the decisions" and "facts supporting a conclusion that a specific employment practice has caused a disparate impact on ADEA protected workers"); *Caputo-Conyers v. Berkshire Realty Holdings,* 2005 WL 1862697, *4 (M.D.Fla. 2005) (finding that "the plaintiff has failed to allege the existence of a 'specific employment practice'"); *Kulkarni v. City Univ. of N.Y.,* 2002 WL 1315596, *1 (S.D.N.Y. 2002) ("the Consortial Arrangement and Allocation System do not constitute a 'specific employment practice'"); *Rodriguez v. Beechmont Bus Serv., Inc.,* 173 F.Supp.2d 139, 148 (S.D.N.Y. 2001) ("[r]ather than identify a neutral employment policy . . ., plaintiff argues not that he fell victim to a neutral policy but that he was subject to deliberate discriminatory conduct"); *Burrell v. State Farm Fire & Casualty Co.,* 2001 WL 797461 (S.D.N.Y. 2001) ("[t]here is no allegation that an otherwise facially neutral policy of the defendants had a discriminatory impact on a class to which the plaintiffs belong").

### b.  The NAACP Has Alleged A Disparate Impact On African-Americans.

The NAACP has alleged that the policies and practices complained of caused a disparate impact on African-Americans.

> The adverse *impact* of [defendants'] policies and practices is felt
> *disproportionately by African American* consumers and members of the
> NAACP, *compared to similarly situated Caucasions. . .*

SAC, ¶53; *see also id.* at ¶¶58, 68 and *passim* (emphasis added).

This is adequate to allege a disparate impact resulting from defendants' *identified* policies and practices. *Powell, supra,* 189 F.3d at 394.

Defendants complain that "the SAC contains no allegations about the terms of any specific subprime loan. . ." Mot. at 20:28 – 21:1. Alleging "the terms of . . . loan[s]," however, is *not* an element for pleading a disparate impact claim. Defendants cite no authority for their position that the failure to plead loan terms renders the disparate impact claim inadequate.

Defendants also argue that "all but one of the studies are based on aggregate data" and "many of the factors that affect the type of loan available and its pricing are not captured or reported as part of this data." Mot. at 21:23-27. Defendants' effort to nitpick NAACP allegations regarding studies showing a statistically disparate impact is meritless. The NAACP is not required to prove its case at this stage. If Defendants' position were correct, and a plaintiff was required to allege the precise statistical impact resulting from a defendant's practices – which information can only be obtained from defendants' record -- no plaintiff would be able to plead a disparate impact claim. Consistent with precedent, a statistical analysis, specific to each defendant, will be pursued *in discovery*. In fact, the Court in *Cedillo* ruled that summary judgment is not available "where the need for discovery in order to obtain the requisite statistical data to substantiate the claims asserted is clear, and where plaintiff was effectively denied the opportunity to engage in that discovery." *Cedillo*, *supra*, 603 F.2d at 12.[13]

At the pleading stage, a plaintiff is only required to *allege* a disparate impact, not *prove* it. The NAACP has alleged that the practices of *each individual* defendant that has caused a disparate impact. SAC, ¶¶58, 68, and *passim*. The aggregate statistics alleged by the NAACP show that lending discrimination is endemic to the industry. These allegations, which are *not* required to state a claim, support the NAACP's allegation that similarly situated African American applicants were adversely impacted by the practices alleged.

Defendants also parse the disparate impact into "two smaller, sub-groups of African-

---

[13] *See also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989) ("liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their [disparate impact] claims") (superseded on other grounds by statute); *Khan v. Sanofi-Synthelabo, Inc.*, 2002 WL 31720528, *4 (S.D.N.Y.,2002) ("plaintiffs 'may employ 'liberal civil discovery rules' to obtain 'broad access to employer's records' in order to generate a statistical analysis to show the disparate impact of an employer's personnel policies'").

Americans," and argue that the allegations are inadequate because they allege disparate impact on "African-Americans generally." Mot. at 21:12-18.  21:12.  This simply ignores the relevant allegations.  The NAACP specifically alleges that Defendants' practices had a disparate impact "on African-Americans compared with *similarly situated* Caucasian *applicants*." SAC, ¶¶58, 68. By alleging that the disparate impact happened to "similarly situated" African-Americans "applicants," the NAACP *is* alleging the correct comparison pool.  *See e.g., Henry v. Jones*, 507 F.3d 558 , 564 (7th Cir. 2007) ("we have explained that 'similarly situated' means only that members of the comparison group are comparable to the plaintiff 'in all *material* respects'").

### c. The NAACP Has Alleged A Causal Connection Between Defendants' Practices And The Disparate Impact.

The SAC complaint alleges a causal connection between the practices complained of and the adverse impact on African Americans.

> The foregoing policies and practices have a disproportionately adverse effect on African Americans compared with similarly situated Caucasian applicants.

SAC, ¶68.

This is adequate to allege that Defendants' practices caused the disparate impact.  Such allegations are comparable to those in *Osborne v. Bank of America, National Association*, 234 F.Supp.2d 804, 812 (M.D.Tenn. 2002), where the court denied a motion to dismiss where "[p]laintiffs allege that Bank of America's policy of authorizing . . . dealer Markups results in significantly higher finance costs being imposed upon African-American customers than upon *similarly situated white customers of equal creditworthiness.*" (emphasis added).

Indeed, alleging causation in discrimination cases is not an exacting standard.  *Stagi v. National Railroad Passenger Corp.*, 407 F.Supp.2d 671, 675-676 (E.D.Penn. 2005) (overruling motion to dismiss in disparate impact case, stating "defendant mischaracterizes . . . the degree of causation a plaintiff is required to allege," and courts should not be "'overly demanding'") *See also Vance v. Chao*, 496 F.Supp.2d 182, 186 (D.D.C. 2007) (denying a motion to dismiss in an employment retaliation case, holding that "plaintiff can meet her *prima facie* burden of causation simply by alleging that the adverse actions were caused by her protected activity").

30

Moreover, even if particularity as to causation allegation was required in discrimination cases (and it is not), the NAACP explicitly alleged the reason why defendants' practices cause a disparate impact: ***[B]ecause African Americans have a much lower mean household income than Caucasions*** ." SAC, ¶68 (emphasis added). The SAC then cites statistics comparing African-American and Caucasian incomes. *Id.* Thus, even if there was a particularity requirement (and there is not), plaintiff adequately alleged causation.[14] The cases relied on by Defendants do not support their position that the NAACP has inadequately alleged causation. *Ward Cove* was a decision after a bench trial – it was not a pleading case. *Ward Cove*, *supra*, 490 U.S. at 648. Its holding that "a plaintiff must ***demonstrate*** that it is the application of a specific or particular employment practice that has created the disparate impact," (*id.* at 657 (emphasis added)), sheds no light on the pleading standard for causation in disparate impact claims. In *Brown*, unlike here, the NAACP *did not* allege any connection between the practices complained of and the disparate impact. *Brown*, *supra*, 163 F.3d at 712 ("Brown does not connect these general statistics to any Coach policy"). Neither *Ward Cove* or *Brown* support Defendants' position that the NAACP's allegations are inadequate.

### 3. The SAC States Specific Allegations Against Each Defendant.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted). As long as the pleading gives each defendant fair notice, the pleadings are sufficient, notwithstanding the fact that the complaint contains the same allegations for each defendant.

When analyzed under the proper standard, the SAC is clearly sufficient. It set forth individual allegations for *each* defendant. These allegations are more than sufficient to inform *each* defendant of the claims against it.

The cases cited by the Defendants are inapposite. Each of the cases involved allegations

---

[14] Plaintiff also alleges that African-Americans have a "relative lack of experience in dealing with banking institutions and mortgage loans." SAC, ¶5.

against defendants based on *a common course of conduct*, and the plaintiff failed to specify which defendant committed which act.  In *Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd.*, 2004 WL 2813121 (S.D.N.Y. 2004), the plaintiff alleged a wide ranging conspiracy against seventeen defendants who, according to the complaint, were related business entities, their shareholders, and directors.  The court dismissed the complaint, noting that "[t]he complaint merely refers to the culpable acts committed by all seventeen defendants, without any attempt to differentiate which act was taken by which party, or how the parties are interrelated." *Id.* at *6.  Similarly in *In re McKesson HBOC, Inc. ERISA Litigation*, 2002 WL 31431588 (N.D.Cal. 2002), the court rejected allegations that "alleging that all [the defendants] violated all of the asserted fiduciary duties." *Id.* at *15.  These vague allegations of common conduct are nothing like the NAACP's allegations, which do not rely on common conduct.

Defendants' heavy reliance on *Bell Atlantic v. Twombly* is also unpersuasive.  The plaintiff in *Twombly* made allegations against defendants based on a common course of conduct. *Twombly*, *supra*, at 1961.  Moreover, the case addressed the Sherman Act, which played a large part in the Court's reasoning.  Thus, *Twombly* relied on the Sherman Act's "prior rulings and considered view of leading commentators...***that lawful parallel conduct fails to bespeak unlawful agreement***." *Id.* at 1965-66 (emphasis added).  The NAACP's case has nothing to do with the Sherman Act.

A more suitable comparison can be made between this case and the Supreme Court decision in *Swierkiewicz*.  There, the Supreme Court declined to adopt the Title VII *prima facie* case as a pleading requirement, instead relying on the "short and plain statement" of Federal Rule of Civil Procedure 8(a). *Sweirkiewicz, supra*, 534 U.S. at 510-12.

Further, two weeks after *Twombly* was decided, the Supreme Court issued *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam), which noted that *Twombly* is not inconsistent with the language of Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Indeed, the effect of *Twombly* has been described the Second Circuit as merely creating a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those

contexts where such amplification is needed to render a claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007). In so holding, the Second Circuit emphasized that "just after issuing its opinion in *Bell Atlantic*, the Court cited it for the traditional proposition that '[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only 'give the defendant fair notice of what the …claim is and the grounds upon which it rests.'"" *Id.* at 157 (internal citations omitted).

In this case, the NAACP is not alleging that the individual defendants are engaged in a common course of conduct or that they are in any way related to each other. The SAC contains allegations, specific to each defendant. That the allegations for each defendant are the same is irrelevant at this stage, since they are presumed true. The complaint provides each defendant all the notice that is required under the Federal Rules and Supreme Court precedent.

**E.  The NAACP Has Properly Alleged A Disparate Impact Claim Under Section 1982.**

The NAACP has also properly alleged a disparate impact claim under section 1982. The Ninth Circuit has held disparate impact claims are proper under that statute.

> Racial motivation is not an element of the section 1982 prima facie case; only a racial impact need be shown. Defendants erroneously argue that we must follow an equal protection analysis and require that plaintiffs prove racial animosity. . ."

*Phiffer v. Proud Parrot Motor Hotel, Inc.* 648 F.2d 548, 551 (9th Cir. 1980).

This Ninth Circuit precedent is binding regardless of what other circuit courts have held as to the availability of disparate impact claims under section 1982. *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) ("[d]istrict courts are, of course, bound by the law of their own circuit, and are not to resolve splits between the circuits no matter how egregiously in error they may feel their own circuit to be").

Defendants do not argue that disparate impact claims are unavailable under section 1982. Accordingly, the NAACP properly alleges disparate impact discrimination under section 1982.

**F.  The NAACP Has Sufficiently Alleged Intentional Discrimination.**

Plaintiff alleges intentional discrimination by the defendants in mortgage lending in violation of sections 1981 and 1982 of the Civil Rights Act.

33

"Both §§ 1981 and 1982 are derived from section 1 of the Civil Rights Act of 1866 and the standards determined from the latter have been frequently applied to the former." *Ortega v. Merit Ins. Co.*, 433 F. Supp. 135, 140 (N.D. Ill. 1977). The *McDonnell Douglas* disparate treatment test, which was originally derived for Title VII disparate treatment analysis, is used to analyze intentional discrimination under sections 1981 and 1982. *Gay v. Waiters' & Dairy Lunchmen's Union*, 694 F.2d 531, 538 (9th Cir. 1982). The *McDonnell Douglas* test has been applied to discriminatory lending claims. *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926 (8th Cir. 1993) (applying the *McDonnell Douglas* test to a Fair Housing claim).

To state a claim for violations of sections 1981 and 1982 of the Civil Rights Act based on discriminatory lending, a plaintiff must allege: "(1) that [plaintiff] is a member of a protected class; (2) that [plaintiff] applied for and was qualified for loans; (3) that the loans were given on grossly unfavorable terms; and, (4) that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms." *Munoz v. Int'l Home Capital Corp.*, 2004 WL 3086907, *4 (N.D. Cal. 2004) (internal citations omitted). "'In the alternative, if the plaintiff presents direct evidence that the lender intentionally targeted her for unfair loans . . . the plaintiff need not also show that the lender makes loans on more favorable terms to others.'" *Id.*

When analyzed under this standard, it is clear that the NAACP has sufficiently alleged intentional discrimination in violation of sections 1981 and 1982 of the Civil Rights Act. The NAACP alleges that the individuals it represents are African-American, a member of a protected class (SAC, ¶43), who have the same qualifications as Caucasian borrowers who received prime loans. SAC, ¶46. The NAACP alleges that African-American borrowers receive loans on grossly unfavorable terms. *Id.* Finally, the NAACP alleges that Defendants intentionally targeted African-Americans in their discriminatory lending practices. *Id.*

Furthermore, Defendants' claim that specific factual allegations of intent are required to survive a motion to dismiss is erroneous. A plaintiff is not required to meet the evidentiary standard for showing a *prima facie* case of discrimination at the pleading stage. *Swierkiewicz, supra*, at 510.

Defendants retreat to *Twombly* is unavailing, since the NAACP has met *Twombly's* "plausibility standard" through the allegations in the SAC.  *See Iqbal*, *supra*, at 157-158.

### G. Plaintiff Can Assert Claims For Violation Of Both The FHA And The ECOA, Even If Plaintiff Cannot Later Recover Under Both.

Defendants are incorrect in asserting that the ECOA (15 U.S.C. § 1691e(i)) precludes Plaintiff from bringing a claim for relief under both the ECOA and the FHA.  This provision merely states that "'[n]o person . . . shall ***recover***' under both statutes where the violation of the ECOA is based on the same transaction as the FHA violation."  *Ware v. Indymac Bank, F.S.B.*, 534 F. Supp. 2d 835 (N.D. Ill. 2008) (emphasis added).  The provision makes no mention of precluding the ***assertion*** of claims under both statutes.  In fact, where Congress has sought to preclude the assertion of parallel legal claims under the ECOA, it has done so explicitly.  The ECOA provides:

> Where the same act or omission constitutes a violation of this title [15 USCS §§ 1691 et seq.] and of applicable State law, a person aggrieved by such conduct may **bring a legal action** to recover monetary damages either under this title [15 USCS §§ 1691 et seq.] or under such State law, but not both.

15 USCS § 1691d(e) (emphasis added).

The court in *Ware* was cognizant of the difference between *recovery* and *bringing* a claim under two different statutes.  In *Ware*, the court, in ruling on a motion to dismiss, allowed the plaintiff to proceed under ***both*** the ECOA and FHA causes of action, while dismissing a state law claim that was predicated on the conduct that formed the basis of the ECOA claim.  *Ware*, 534 F. Supp. 2d 835.  Accordingly, the ECOA claim offers Defendants no grounds on which to seek dismissal of plaintiff's FHA claims.

## III.   CONCLUSION

For all the foregoing reasons, the NAACP respectfully requests that this Court deny the Defendants motion to dismiss in all respects.

Dated:  April 26, 2008           KABATECK BROWN KELLNER LLP

By:   Richard L. Kellner  /s/
RICHARD L. KELLNER
KABATECK BROWN KELLNER LLP

35